## FREDERICK FOX

### *vs.*

## NATHANIEL STEVENS.

In an action by a father for the seduction of his daughter, the testimony of the daughter as to promises made to her by the defendant during his guilty visits is competent.

.Evidence of propositions made by defendant to the plaintiff's daughter during the same visits to procure an abortion, and a request of the defendant to her to marry his son, the manifest purpose of which was to cover the defendant's guilt, is admissible as tending to establish the seduction. ·

Evidence that the defendant was influential in procuring the plaintiff the position of Chairman of the Town Board, and also of statements by defendant to the plaintiff and his family favorable to a marriage between his son and the plaintiff's daughter, made prior to any illicit intercourse between the defendant and the latter, is competent to show the relations and confidence existing between the parties.

In cases of wilful wrongs, exemplary damages may be given.

The Court was correct in charging the jury if they should find for the plaintiff that besides the loss of services, and the disbursements for medical treatment, and other necessary expenses, they could give such additional

Fox v. Stevens.

damages for wounded feelings, mental suffering, and for the dishonor of the plaintiff and his family, as they should deem from the evidence to be a reasonable and just compensation therefor, not exceeding in all the amount claimed in the complaint.

This action was brought by the plaintiff for the seduction of his daughter, Catharine Fox. It was tried at the District Court in Blue Earth Co., in May, 1867, when a verdict for $1,543 was rendered for the plaintiff. A motion for a new trial made upon a case was denied, and judgment entered upon the verdict. The defendant appeals to this Court. Upon the trial there were only two witnesses sworn and examined, the plaintiff and his daughter, who testified on behalf of the plaintiff. The defendant produced no witnesses. It appears from the evidence of the daughter that plaintiff and defendant were on very intimate terms, and that defendant frequently visited at the house of plaintiff. That the defendant some time in the month of February, 1865, first made improper proposals to her to induce her to have criminal intercourse with him, which were continued from time to time, and quite frequently, both in person and by writing, to the month of June, 1865, when she did have such criminal intercourse with the defendant for the first time. It also appears that such intercourse was continued from time to time down to about the middle of September, 1865; and that she became pregnant, and was delivered of a child on the 15th of June, 1866, of which she testified the defendant was the father. There is no testimony in the direct examination of the daughter of any active resistance on her part to such criminal intercourse. On her cross examination, however, in respect to the occasion of the first connection with defendant, she testified:

"I went to the barn and was picking up potatoes when Stevens came and threw me down into the manger; I exerted myself, I tried to get away from him, I told him to kill me

and done with it; I screamed; don't know how loud; he held my hands; I don't remember how he held my hands with his hands during the whole operation; I don't know what he done with my hands when I was in the manger; I was so frightened I did not know what to do; could not say whether I made any resistance or not, when he laid me in the manger, but think I tried to push him away; don't recollect much, he frightened me so much." * * *

And again she testified: "Next time he had connection with me was about three weeks; this was at our house; this was in the afternoon; we were alone; he commenced his conversation and proposed for me to indulge with him; I went out of the house; he came after me and pulled me into the house, and threw me down; I struggled; I don't remember whether I kicked him or struck him, but I tried to get up and get away from him; I tried to get away from him when he pulled me into the house; did not halloo after he threw me down; I did not assist him any; he did it all himself; don't know where my hands were; after he got up he told me not to cry about it; that other people did so; did not tell any one about it; he said if I did he would run away; next time he had connection with me was the next week at the same place; after he had connection with me a few times I yielded to his request; I objected to the connection about a dozen of times; I resisted twice " * * *

It does not appear that the daughter ever informed her father as to the proposals of defendant, or of the consummation of the criminal intercourse, or who was the father of the child until after the same was born.

Upon the direct examination of Catharine, she was asked the following questions: "Did he make any promises to you during those visits, and if so, what were they?" "Did he make any propositions to you about procuring an abortion

here, and if so, what were they?"  "What medicine did he advise you to get?"  "Did the defendant at any time ask you to marry his son?"  These questions were separately objected to by defendant's counsel, as immaterial and irrelevant.  The Court overruled the objections and defendant excepted.  The witness answered the questions in the affirmative, relating the promises made to her, and when and how the medicine was obtained for procuring the abortion, and what the same was; and in answering the question last mentioned, said : "After he had connection with me, and before I was in the family way, he said if I would marry his son he would never say anything about it, and it would never be found out, and wanted to know if his son had made me any offer to marry me; I said no; he wanted to know if I was engaged, and if not he would encourage the visits of his son." * * * Testimony of a similar character respecting the marriage of the defendant's son with the plaintiff's daughter was given by the plaintiff, under objection by the defendant, and of conversations between the defendant and plaintiff and his family on the subject prior to any illicit intercourse between the defendant and plaintiff's daughter.  The plaintiff in his direct examination after testifying that he was Chairman of the Town Board, and that his relations with defendant were very friendly, and on account of their business connection, the defendant was frequently at his house, was asked the following question : "State whether the defendant was influential in procuring you this position?"  The defendant objected, and the objection was overruled, and the testimony allowed "to show the confidence and relations in which the parties were living"; defendant excepted, and the witness answered: "Stevens exerted himself warmly in my behalf to elect me to the position of supervisor."

The Court charged the jury, among other things, that "if

they should find for the plaintiff, that besides the loss of services and the disbursements for medical treatment and other necessary expenses, they could give such additional damages, for wounded feelings, mental suffering, and for the dishonor of the plaintiff and his family, as they should deem from the evidence to be a reasonable and just compensation therefor, not exceeding in all the amount claimed in the complaint." To which the defendant, by his counsel, excepted.

ANDREW C. DUNN and BRISBIN & PALMER for Appellant.

BUCK & FREEMAN and WILKINSON & WOOLFOLK for Respondent.

*By the Court*—McMILLAN, J.—The first point urged by the appellant as a ground for a new trial is, that the verdict is not justified by the evidence, which shows affirmatively that there was no seduction. The specific objection to the verdict is, that the evidence shows a want of consent upon the part of plaintiff's daughter to the illicit intercourse of the defendant, and establishes, if anything, a rape. We think the objection is not well taken. While the cross-examination of the plaintiff's daughter shows that she was not altogether passive when the defendant first laid his hands on her, there is no intimation in the examination in chief of resistance on her part, and the whole testimony in the case shows her consent to the illicit intercourse of the defendant.

The testimony of the witness Catharine Fox as to promises to her made by the defendant during his guilty visits was clearly competent. Evidence of propositions made by defendant to this witness during the same visits to procure an abortion, we think were properly received. It has been held that evidence of this nature was admissible in a case of this kind in aggravation of damages. (*Hunt vs. Prince*, 21 *Wend.*

79); and testimony of this character seems to have been received without objection in *Dain vs. Wycoff*, 7 *N. Y.*, 191.

The objection to the testimony in the case at bar was its irrelevancy. We think the evidence was admissible, at least as tending to establish the seduction. Evidence of the request of the defendant to the witness to marry his son, in the form stated by her, is similar in its nature to that just considered.

The question put to the plaintiff whether the defendant was influential in procuring him the position of Chairman of the Town Board, and the statement of the defendant about his son marrying the plaintiff's daughter, were competent to show the relations and confidence existing between the parties, particularly as affecting the question of the plaintiff's negligence with respect to his daughter, which is made the third ground of the defendant's objection to the verdict.

In cases of wilful wrongs it is settled by authority that exemplary damages may be given. Whatever my individual opinion may be, the rule must be followed. We see no reason why this case does not come within the rule. There is no ground whatever for alleging any collusion between the plaintiff and defendant, or any passive sufferance or connivance on the part of the plaintiff at any improper familiarity between his daughter and the defendant, which would defeat a recovery by the plaintiff. Nor in view of all the evidence in the case do we think the testimony shows any such negligence on the part of the plaintiff, or any other circumstance which will justify us in saying that the damages were given under the influence of prejudice or other improper motive. The charge of the Court is strictly accurate.

The judgment is affirmed.