LAVERY VS. CROOKE.

*May 11 — September 27, 1881.*

PARENT AND CHILD: SEDUCTION: DAMAGES. *(1) Father's right to recover for loss of services of infant daughter; its limit. (2) Measure of damages: proof of defendant's pecuniary condition. (3) Action for loss by seduction: force not a defense.*

PRACTICE. (4) CONTINUANCE *to procure evidence: discretion of court. (5) Case stated.*

1. A father may recover for loss of service of his infant daughter caused by her being gotten with an illegitimate child, notwithstanding she was not at the time actually in the service of the father (but in that of the defendant), if he still retained the legal right to reclaim such service.

2. While the cause of action in such a case is technically the loss of service, the jury are not confined to the actual pecuniary loss, but may award exemplary or punitory damages; and evidence is admissible to show the defendant's pecuniary condition.

3. It is no objection to the maintenance of an action for seducing the plaintiff's daughter, that defendant procured the sexual intercourse by force, at least where such force was less than would constitute rape.

4. The filing of an affidavit of the character prescribed by Rule XX of the C. C. Rules does not necessarily entitle the party to a continuance as a matter of right; but it is for the court to determine, from the facts stated to show "the nature and kind of diligence used," whether *due* diligence has been used to prepare for trial.

5. In view of the fact that defendant in this action had already obtained two continuances, and of the circumstances of the case (stated in the opinion), the circuit court did not err in refusing another continuance for the purpose of enabling him to obtain testimony which the witness relied upon cannot be compelled to give, and which he would not be likely to give voluntarily, because it would criminate himself; it appearing from defendant's affidavit that such witness probably absconded from the state to avoid a subpœna in the action, and is still absent therefrom.

APPEAL from the Circuit Court for *Columbia* County.

Action for loss of services of plaintiff's daughter Katie, a minor, and for expenses accruing to plaintiff, in consequence of such daughter being debauched and rendered pregnant by the defendant, about October 15, 1878. The action was commenced in Dodge county. Issue was joined therein on the

26th of August, 1879, and the cause was noticed for trial by the plaintiff at the October term of the circuit court for said county for 1879, but was continued upon defendant's affidavit, for want of a material witness. It was then noticed for trial by the plaintiff at the February term of said court for 1880, when, upon defendant's affidavit of the prejudice of the judge of that court, the venue was changed to the circuit court for Columbia county, in which court the cause was noticed for trial by the plaintiff for the May term, 1880. When the cause was reached in its order on the calendar at said last-mentioned term, the defendant moved for a continuance, upon his affidavit in the usual form, on the ground, in effect, that he was informed, March 17, 1880, by one John Brennan, who then resided in the same town with the defendant, that he, said Brennan, had had carnal intercourse with Katie on the 13th of October, 1878, and also at another time during that fall, and would testify to the facts; that Brennan was then living with his mother, and promised the defendant that he would be present at the trial and so testify; that the same promise was reiterated from time to time until May 3, 1880, when defendant informed him that the court would commence. May 11, 1880, and that he expected him to be present, and was assured that he would; that on May 7th the defendant procured a subpoena, and on the afternoon of Saturday, May 8th, delivered it to the sheriff, with directions to serve the same on Brennan, as well as other witnesses; that on Monday, May 10th, said sheriff served the subpoena on other witnesses, and sought to serve the same on Brennan, but ascertained that the Sunday before, being May 9th, he had clandestinely absconded and departed from this state; and that Katie had sworn, in a bastardy proceeding against the defendant, that she had never had carnal intercourse with any other person than the defendant. The motion was denied, and the cause was tried at that term.

Defendant was the uncle of Katie, having married her father's sister. He had no child by his wife, and from the sum-

mer of 1875 to November, 1878, Katie was in the habit of stopping with her uncle and aunt a portion of the year, at their request, but without wages or any agreement as to service. In November, 1878, she went home to her father's, where she remained until about April 20, 1879. She then returned to her uncle's, and remained there until about June 22, 1879, when she returned to her father's, and there remained; and about three weeks afterwards, to wit, July 13, 1879, she was delivered of a child.

There was a verdict against the defendant, assessing plaintiff's damages at $1,500. From a judgment pursuant to the verdict, defendant appealed.

For the appellant there was a brief signed by *E. P. Smith* and *A. Scott Sloan*, his attorneys, with *W. J. McElroy*, of counsel, and oral argument by *Mr. Smith*.

The cause was submitted for the respondent on briefs signed by *A. G. Cook* and *H. W. Lander*.

The following opinion was filed June 4, 1881:

CASSODAY, J. It is urged by counsel that the affidavit set forth was strictly in compliance with rule XX of the circuit court, and hence that the defendant was entitled to a continuance as a matter of right. By that rule, the affidavit was required to show, among other things, that the defendant had used due diligence to prepare for trial, and the nature and kind of diligence used. Of course, the court was required to pass upon the sufficiency of such statements. In view of the circumstances of the case, and the continuances already obtained by the defendant, we are not prepared to hold that it was error to deny the motion. It is conceded that Katie was only a few months over fifteen years of age at the time of intercourse, and that she was then, and had for some months been, stopping at the house of the defendant. It must be presumed that a little girl of such tender years would have the watchful care of uncle, as well as aunt, in the absence of guilt on his

part.    There is no pretense that Brennan ever lived at or near the defendant's at the time of the intercourse, and the affi-davit contains no suggestion of any place or opportunity of his meeting Katie, October 13, 1878, or any other time.    The statement is that he was working for his mother, who was a neighbor of the plaintiff, where Katie was not at the time stopping.

Katie was at the defendant's house from April 20, 1879, un-til three weeks of the time of her delivery, of which the de-fendant must necessarily have been informed, and yet he states in his affidavit that "*he commenced* making inquiries and in-vestigations concerning the chastity" of Katie immediately after this action was commenced, which was August 7, 1879, and although ascertaining conduct on her part which might warrant suspicion as to her purity of character, yet he was unable to ascertain that she had had intercourse with any per-son whatsoever until informed by John Brennan, March 17, 1880, more than eight months after the child was born.    In view of the fact that Katie was at the defendant's at the time the intercourse must necessarily have taken place, and of the prior continuance and change of venue, the story would seem to be at least suspicious.    It is difficult, moreover, to compre-hend what motive Brennan could have, even had he committed the offense, to voluntarily make disclosure of his own crim-inality and disgrace, to one who was already implicated and being prosecuted, while he himself was unsuspected.    Had he actually done so, and had the defendant, *John Crooke*, in fact been innocent of the offense, it would seem that his own sense of duty to himself, as well as to the father of the little girl, would naturally have induced him to investigate the truth of Brennan's statement, with the view of bringing him to justice and vindicating himself.    But nothing of the kind is disclosed; on the contrary, if the statement was ever made, he seems to have kept it to himself for more than fifty days, apparently so that it would not be investigated.    Besides, if Brennan did make

such disclosure, the defendant must have known that he could not compel him to testify to his own criminality, and that in all probability he would decline to do so, even if present at the trial. The defendant, apparently, did not even tell his counsel of the alleged disclosure. Had he done so, he would probably have been informed that he could not compel Brennan to give such testimony, and that this court had just before held that it was no error to refuse a continuance for the absence of such a witness. *Dingman v. State*, 48 Wis., 485.

It was suggested by counsel, on the argument, that had a continuance been granted the defendant might have been able to procure the deposition of Brennan to be taken in some other state, where the fear of his own prosecution would have been less imminent. But as the giving of such testimony would at most have been a matter of favor to the defendant, he should have sought to procure it in the way suggested during the fifty-four days between the alleged disclosure and the sitting of the court. The secrecy and non-action of the defendant for so long a period, in a matter so vital to his own reputation and standing as a man, naturally excite grave doubt as to whether any such disclosure was ever made; although it may be that Brennan promised to testify as stated, but as the time approached his heart apparently weakened, and he made his escape. We are clearly of the opinion that there was no error in denying the application for a continuance.

It is urged by counsel that there was no evidence tending to show that Katie was in the service of her father at the time of the intercourse. She was at that time only fifteen years of age. There is no pretense that the defendant had any right to her service, or to detain her from her father against his wish. She was merely stopping with the defendant and his wife, at their request and for their pleasure, at a time when she was not needed by her father and mother, as she had done from time to time during the three years previous. There is evidence that she worked at her father's when at home. We have

carefully examined the several authorities cited by the learned counsel to show that Katie was not at the time of the intercourse the servant of the plaintiff. In most of them the daughter was of age and under contract of service to another.

In *Grinnell v. Wells*, 7 M. & G., 1033, the daughter had permanently left her father, with no intention of returning, and there was no pretense of loss of service alleged or proved. TINDAL, C. J., said: "The declaration in this case contains no allegation of the loss of the service of the daughter."

In *Carr v. Clarke*, · 2 Chitty, 260, the father had moved away from his former home, leaving his daughter, who was under age, in the service of another; and a nonsuit was granted on the ground that there was no evidence tending to show an intention to return to the father. BAYLEY, J., said: "The cases go upon the express ground that the relation of master and servant must exist, but the evidence may be very slight. The parties must stand in the relation of master and servant, although a temporary absence may not be sufficient to destroy that relation."

In *Bartley v. Richtmyer*, 4 N. Y., 38, a step-father sought to recover on account of intercourse with his step-daughter, about nineteen years of age, and who left his house about two years before, with no intention of returning; and it was held, in an able opinion by BRONSON, C. J., that "the action for seduction is founded on the loss of service, and in order to maintain it there must be an actual or constructive relation of master and servant. And in order to constitute the constructive relation, the master must have the right to command the services of the female at his pleasure. The relation exists constructively between a father and his infant daughter, although the latter is actually in the service of another, provided the former has a right to reclaim her services at any time. But a step-father is not, as such, entitled to the services of his step-daughter, and is not liable for her support."

In *White v. Nellis*, 31 N. Y., 405, cited by counsel for the

defendant, a verdict for the father was sustained. DAVIS, J., giving the opinion of the court, said: "This action is not maintainable upon the relation of parent and child, but solely upon that of master and servant. The latter relation existed in this case, because the debauched girl was the minor child of the plaintiff, and, although living at the time of the seduction with the defendant, the father might have commanded her services at pleasure." Page 407. This seems to be a correct statement of the law, and it is abundantly supported by authority. *Martin v. Payne*, 9 Johns., 387; *Clark v. Fitch*, 2 Wend., 459; *Mulvehall v. Millward*, 11 N. Y., 343; *Furman v. Van Sise*, 56 N. Y., 435; *Hornketh v. Barr*, 8 Serg. & R., 36; *Kennedy v. Shea*, 110 Mass., 147; *Blagge v. Ilsley*, 127 Mass., 191; *White v. Murtland*, 71 Ill., 250; *Griffiths v. Teetgen*, 28 Eng. L. and Eq., 371. In the case last cited, the minor daughter, with the consent of her father, went and worked for the defendant a month during the absence of his wife, for which he agreed to pay her something, and he did; but the father recovered.

In *Martin v. Payne*, the minor daughter, with her father's consent, went to live with her uncle, for whom she worked when she pleased, under an agreement that he should pay her for her work, but there was no agreement as to her remaining any definite time; and it was held that the father could recover, notwithstanding she had no intention of returning to her father's had not the misfortune happened. SPENCER, J., said: "She was his servant *de jure*, though not *de facto*, at the time of the injury; and, being his servant *de jure*, the defendant has done an act which has deprived the father of his daughter's services, which he might have exacted but for that injury." Page 390.

In *Clark v. Fitch* it was held that the father might maintain the action, although the minor daughter had left her father with his consent, and was *de facto* the servant of another at the time of the injury, and he had relinquished all claim to

her services and incurred no actual expense, as he might at pleasure revoke such license, recall his daughter, and control her services.

In *Mulvehall v. Millward*, the minor daughter left her father's and was injured while in the employ of the defendant, where she remained until after her confinement and recovery, and there was no proof that her father took care of or expended anything on her account during her sickness; but it was held that he could recover.

In *Furman v. Van Sise* it was held that a widowed mother could recover, although her minor daughter was at the time of the injury at work for the father of the defendant for wages, to be applied to her own use, under an agreement with the mother. The other cases cited all go to the extent of holding that the father could recover if he had not parted with the right to control his minor daughter's service.

Here the question of service was fairly submitted to the jury, upon the principle of the authorities cited, and there was sufficient evidence to sustain the verdict in this respect.

It is urged by the counsel for the defendant that the charge left the jury free to find punitive damages, whereas they should have been confined to compensatory damages.

In *Klopfer v. Bromme*, 26 Wis., 372, the right of punitory damages in such a case does not seem to have been questioned. In *Bass v. C. & N. W. Railway Co.*, it was held that punitory damages might be allowed to the plaintiff for being put out of a ladies' car by a brakeman on the defendant's train, and $2,000 assessed as such damages were sustained. 42 Wis., 654; *S. C.*, 39 Wis., 636.

*Edmondson v. Machell*, 2 Term Rep., 4, was an action for loss of services by reason of an assault and battery to a servant, and the action was likened by the trial judge, in his charge to the jury, to an action by a father for deflouring his daughter, in which large damages had often been given, and that upon the whole case the jury had a right to give such

damages as they thought just, considering the situation and circumstances of the defendant; and they returned a verdict of £300, which was sustained by the court of king's bench. This case was approved by Lord ELLENBOROUGH, C. J., in *Irwin v. Dearman*, 11 East, 23. *Tullidge v. Wade*, 3 Wils., 18, was an action by a father for loss of service of his daughter by reason of seduction, and Lord Chief Justice WILMOT, with whom the other judges concurred in refusing a new trial after verdict for the plaintiff, said: "Actions of this sort are brought for example's sake; and although the plaintiff's loss in this case may not really amount to the value of twenty shillings, yet the jury had done right in giving liberal damages." In that case the daughter was thirty years of age.

*Bedford v. McKowl*, 3 Espinasse, 119, was an action by a mother for the loss of service of her daughter by reason of her seduction, tried before Lord ELDON, just before his appointment as lord chancellor; and, among other things, he said: "In such case, I am of opinion that the jury may take into their consideration all that she [the mother] can feel from the nature of the loss. They may look upon her as a parent losing the comfort as well as the service of her daughter, in whose virtue she can feel no consolation, and as the parent of other children, whose morals may be corrupted by her example."

*Andrews v. Askey*, 8 Car. & Payne, 7, was an action by a widow for the seduction of her daughter, and TINDAL, C. J., *inter alia*, said: "You are not confined to the consideration of the mere loss of service, but may give some damages for the distress and anxiety of mind which the mother has felt. If you find for the plaintiff, you will take into consideration the *situation* in life of the *parties*, and say what you think, under all the circumstances of the case, is a reasonable compensation to be given to the mother." See *Bennett v. Allcott*, 2 Term, 167; *Berry v. Da Costa*, L. R., 1 C. P., 331.

In *Ingersoll v. Jones*, 5 Barb., 661, an action was brought for loss of service of an adopted daughter and servant, and, on

motion for a new trial, the court, per SILL, J., said: "Exemplary damages may always be allowed in this kind of actions, in the discretion of the jury. For seduction the servant has no action. This distinction is noticed in the case cited by the defendant's counsel (24 Wend., 424; 4 Denio, 461); and the propriety of allowing exemplary damages to be recovered in an action like this is there conceded." Pages 664–5.

*Knight v. Wilcox*, 18 Barb., 212, was an action for loss of service by reason of the seduction of a daughter, and it was held, per STRONG, J., that "it was proper for the judge to charge that on the question of damages the jury may take into view the wounded feelings of the plaintiff, and may not only recompense him, but punish the defendant according to the aggravation of his offense. A father may recover vindictive damages for the seduction of his daughter." That case was subsequently reversed in the court of appeals on the ground that there was no sufficient proof of service; but the question of punitive damages was not considered. 14 N. Y., 413.

In *Badgley v. Decker*, 44 Barb., 577, the daughter was twenty-five years of age, and it was held that "the plaintiff is not restricted to compensatory damages; and it is not erroneous for the judge to charge the jury that, in estimating the amount, they may take into consideration the wounded feelings of the plaintiff, and the disgrace to the family." This ruling was based upon the decision in *Knight v. Wilcox*, 18 Barb., 212.

In *Damon v. Moore*, 5 Lansing, 454, it was held at general term, per PORTER, J., that it was not error to sustain a verdict giving the mother exemplary as well as compensatory damages ($1,500) for loss of service on account of the defendant having debauched and carnally known her daughter and servant, whether the action was in the form of *trespass* or *case*, or brought about by *seduction* or *force*.

In *Lipe v. Eisenlerd*, 32 N. Y., 229, the daughter was twenty-nine years of age, and the father obtained a verdict of

$1,000, and the judgment thereon was affirmed at general term, and in the court of appeals, where it was held that "the plaintiff is not limited in his recovery to mere compensatory damages, but may recover exemplary damages when he is so connected with the party as to be capable of receiving injury through her dishonor."

In *Applegate v. Ruble*, 2 A. K. Marshall, 128, a verdict in such case for $1,800, including exemplary damages, was sustained.

*Fox v. Stevens*, 13 Minn., 272, was a case of this kind; and McMILLAN, J., in speaking for the court, said: "In cases of wilful wrongs it is settled by authority that exemplary damages may be given. . . . We see no reason why this case does not come within the rule." Page 277.

*Phelin v. Kenderdine*, 20 Pa. St., 354, was a case like this; and LEWIS, J., speaking for the court, said: "Although the action by a parent for the seduction of his daughter has its technical foundation in the loss of his daughter's services, it is well settled that proof of the relation of master and servant, and of the loss of service by means of the wrongful act of the defendant, has relation only to the form of the remedy, and that, the action being sustained in point of form by the introduction of these technical elements, the damages may be given as a compensation to the plaintiff, not only for the loss of service, but also for all that the plaintiff can feel from the nature of the injury." Page 361. He also approvingly adopts the following language from the supreme court of the United States, as applicable to that case: "In actions of trespass, and all actions on the case for torts, a jury may inflict what are called exemplary, punitive or vindictive damages upon the defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff." Id. See *Day v. Woodworth*, 13 How., 371.

It is true, there are but few reported cases where the jury were directly charged, as here, that they might not only com-

pensate the plaintiff, " but punish the defendant according to the aggravation of the offense; " but we are to remember that courts have almost uniformly treated the case rather as an anomaly. While the loss of service is the gist of the action, and essential to maintain it, yet we are not aware of any reported case brought by a parent where the value of such services was held to be the measure of the damages. On the contrary, the feelings of the parent, the dishonor of himself and family, and the example to his other children, have been regarded by all courts as the important elements making up substantial damages in connection with the slight pecuniary loss. The action is grounded in tort, and necessarily wilful, and we see no reason why punitory damages may not be allowed to a parent for such injury so intentionally inflicted upon him and his family. The language used in the charge as to punitory damages may not be sufficiently guarded, but if the defendant desired to have the instruction more specific, he should have so requested. This he did not do, but seemed to think that the plaintiff had no right to exemplary or punitory damages, and accordingly requested the court to so instruct, which was contrary to our view of the law.

This also disposes of the objection to the evidence as to the defendant's pecuniary circumstances. It was just that kind of evidence that was held properly admissible in *Applegate v. Ruble, supra,* and a verdict for one-tenth the amount of the defendant's property was sustained. So, also, *White v. Murtland, infra.* Courts are liberal in such cases to allow evidence to show the circumstances and conduct of the respective parties, not only at the time of the alleged injury, but before and after, as bearing upon the question of damage. *Klopfer v. Bromme,* 26 Wis., 372; *Hewit v. Prime,* 21 Wend., 79; *Davidson v. Goodall,* 18 N. H., 423; *White v. Murtland,* 71 Ill., 250; *Blagge v. Ilsley,* 127 Mass., 191; *Kennedy v. Shea,* 110 Mass., 147.

The counsel insists that the court should have instructed

the jury, as requested, that if the wrongful connection was the result of rape, then the action could not be maintained. The judge submitted the case to the jury on the.theory that plaintiff could recover only on the ground of seduction, "and without such force as would amount to rape," and then defined the meaning of rape.

In *Kennedy v. Shea, supra*, it was held that "it is no objection to the maintenance of an action for seducing the plaintiff's daughter, that the sexual intercourse between the daughter and the defendant was had by force." See also *Damon v. Moore, supra*.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 27, 1881.