## GEMMILL v. BROWN.

[No. 2,556.   Filed March 6, 1900.   Rehearing denied June 5, 1900.]

SEDUCTION.— *Complaint.— Promise of Marriage.*—A complaint for seduction, which alleges promise of marriage as one of the means employed by defendant to accomplish his purpose, is not bad for failure to aver that defendant failed and refused to keep that promise.   *p. 10.*

SAME.—*Complaint.—Plaintiff's Chastity.*—In an action for seduction the complaint need not aver the former chastity of plaintiff.   *p. 10.*

VENUE.—*Number of Changes.*—When a party is granted one change of venue from the county, whether it is perfected or not, the party who asks it can have no other change.   *p. 11.*

SEDUCTION.—*Evidence.—Financial Condition of Defendant.*—In an action by a woman for her own seduction, it is not error to permit the defendant to testify as to his financial condition.   *p. 11.*

TRIAL.—*Deposition as Evidence.—By Whom Read.*—Where a party who took a deposition offered the same at the trial, but read only the examination in chief, it was not reversible error for the court to permit the party against whom the deposition was taken to read the cross-examination and re-cross-examination thereof, if the deposition was read in consecutive parts, and went to the jury as a whole. *pp. 12-14.*

SAME.—*Practice.—Admission of Deposition Taken in Another Cause Under Alleged Agreement.*—Where, on the trial of an action, a party seeks to introduce in evidence a deposition taken in another cause, upon an alleged agreement that the deposition should be so used, and the question as to whether or not such agreement had been made is submitted by means of affidavits and counter affidavits, the ruling of the trial court thereon will not be reviewed on appeal, unless it appears that the trial court abused its discretion.   *p. 14.*

SEDUCTION.—*Evidence of Prior Unchastity.—For What Purpose Admissible.*—In an action by a woman for her own seduction, evidence of specific acts of immorality on her part, prior to the time of the alleged seduction, is admissible in mitigation of damages, and as tending to show that she was not seduced.   *p. 16.*

INSTRUCTION.—*May Contain More Than One Proposition of Law.*—An instruction is not bad because it embraces more than one proposition of law.   *p. 16.*

SEDUCTION.—*Measure of Damages.*—In an action for seduction the plaintiff may recover damages for her anguish of mind and her pain and suffering incident to the birth of a child, the fruit of such seduction.   *p. 16.*

Gemmill *v.* Brown.

SEDUCTION.—*When Several Acts of Intercourse Constitute the Elements of One Wrong.*—Where, in an action for seduction, successive acts of intercourse are shown to have occurred under a promise of marriage, and by arts, wiles, persuasions and solicitations on the part of the defendant, the several acts of intercourse may be regarded as constituting the elements of one wrong. *p. 17.*

INSTRUCTIONS.—*All Construed Together.*—If the instructions given, all taken together, state the law correctly, and are not calculated to mislead the jury, the judgment will not be reversed on appeal, though one or more of the instructions standing alone do not correctly state the law. *p. 18.*

From the Adams Circuit Court.    *Affirmed.*

*J. J. M. LaFollette, D. T. Taylor* and *O. H. Adair,* for appellant.

*E. R. Templer, C. C. Ball, J. N. Templer* and *W. H. Williamson,* for appellee.

WILEY, C. J.—The record shows that the original pleadings were lost, and the cause proceeded to final judgment upon substituted pleadings. The appellee was plaintiff, and sued appellant to recover damages for her seduction. Her complaint was in two paragraphs, and a demurrer thereto was overruled. Appellant answered by general denial. The cause was tried by a jury, and resulted in a general verdict for appellee for $3,000. Over appellant's motion for a new trial, judgment was rendered on the verdict. The overruling of the demurrer to the first and second paragraphs of complaint and the overruling of the motion for a new trial are assigned as errors.

In determining the sufficiency of the complaint, a general statement of its allegations will not be out of place. It is charged that appellee was at the time of the alleged seduction, and still is, an unmarried female, under the age of twenty-one years; that in March, 1891, when she was only fifteen years old, at the solicitation and request of appellant, she went to live with him and his family; that at that time he was a widower, and still is an unmarried man; that appellant's family consisted of himself and two small children; that he was over fifty years old, was, and still is a man

of large wealth and influence; that appellant then agreed with appellee that she would live with him and his family; that he would treat her as one of his own children; that she should go to school with his children, and that he wanted her to go with them for company; that he promised her and her parents to be kind to her and treat her right; that it was agreed that appellee should help in and about the household work, and aid in looking after and caring for appellant's children; that, in pursuance to said arrangements, she did go and make her home with appellant, and so remained until 1894; that from March, 1891, until the grievances complained of, appellant did treat her in a kind and affectionate manner; that he frequently expressed to her his love and admiration; that he frequently embraced and caressed her; that he gave to her valuable gifts, and promised to marry her. The complaint then contains the following averments: "And the plaintiff avers that, by reason of such kind and affectionate treatment by defendant of plaintiff, and on account of defendant's declarations of love and affection for plaintiff, and of his presenting her with gifts and presents, and on account of defendant's promise to make plaintiff his wife, he, the said defendant, thereby gained the plaintiff's esteem, respect, and confidence; and the plaintiff says that after the defendant had, in manner and form above pleaded, gained the plaintiff's affections and confidences that the said defendant, with wicked and unlawful design and purpose to betray her confidence and accomplish her ruin, did, on or about the — day of October, 1892, at the defendant's said home, solicit and importune plaintiff to sexual intercourse with him, said defendant, and, to induce her to submit to his embraces, again promised to make her his wife, whereby, and by reason of her love and affection for, and her confidence in him, said defendant, she was induced to and did have sexual intercourse with him on said day." The above quotation is from the first paragraph of the complaint, and in connection with the general statement which

Gemmill *v.* Brown.

precedes it is all that need be quoted or stated to dispose of
the objections urged to it. As to the general averments,
the second paragraph is substantially like the first, but con-
tains the following: "And the plaintiff avers that the said
defendant, totally disregarding the promises and agree-
ments made to the plaintiff and her parents, as aforesaid,
and wickedly intending to wrong, injure, debauch, and
seduce plaintiff, took advantage of her youth and inexperi-
ence, of her position as a member of his family, as afore-
said, and of his experience and position, and with the
wicked and corrupt intention and designs aforesaid the said
defendant did, for the purpose of gaining the confidence,
love, and respect of plaintiff, and to induce her to submit
to his embraces and have sexual intercourse with him said
defendant did, at various times, and from time to time,
express his love and affection for plaintiff, and did embrace
and caress plaintiff, and plaintiff says defendant made her
many valuable presents and was kind and considerate
toward plaintiff, and would and did take plaintiff riding,
and said to plaintiff at various times that he thought she
would make him a nice wife, that he loved her, and at divers
times asked plaintiff if she thought he was too old for her,
and if she loved him, and asked plaintiff if she thought
she could live happily with him; whereby and by reason of
which the plaintiff says that the said defendant, by the
means of the said several promises, and his said expressions
of love and affection for plaintiff, and by reason of the said
uniform kind and affectionate treatment by defendant of
plaintiff, the defendant did thereby gain her confidence and
affections; and the plaintiff says that said defendant, having
thus gained the plaintiff's confidence and esteem, did on or
about the — day of October, 1892, at the said home of
defendant, at said county and State, solicit and importune
her to sexual intercourse with him; and, to induce her to
submit to his embraces, defendant told her that she ought
to submit to him, that there would be no wrong in her doing

so, that he would protect her, and he promised to make her his wife; whereby, and by reason of her youth and inexperience, and by reason of her affection for him, and by reason of her confidence in defendant, she was induced to and did have sexual intercourse with him on said day, and at various times thereafter."

The first objection urged to the complaint is that it does not aver a failure or refusal of appellant to keep and perform his alleged promise to marry appellee. Counsel urge that it is the theory of each paragraph of the complaint that the alleged seduction was brought about by appellant's promise to marry appellee, and that the complaint, omitting to charge that he failed and refused to keep that promise, makes it bad. If this were an action for a breach of a marriage contract, such averment would be necessary. From the allegations of the complaint which we have just quoted, it is evident that it does not proceed alone upon the theory that the seduction was brought about by the promise of marriage, but merely as one of the elements or means employed by appellant to accomplish appellee's seduction. But a promise of marriage is not a necessary element in seduction. In *Ireland* v.*Emmerson,* 93 Ind. 1, the court said: "A promise of marriage is one of the means often resorted to by the seducer to accomplish his purposes; but such promise is by no means a necessary element in seduction. That is, seduction may be accomplished without any promise of marriage."

The next objection to the complaint is that the first paragraph is insufficient because it does not aver that at and before the seduction appellee was a chaste and virtuous woman. Such allegation is unnecessary. To maintain her action it was unnecessary for appellee to prove her chastity, for the presumption of the law is in favor of a woman's chastity. *Robinson* v. *Powers,* 129 Ind. 480. It being unnecessary to prove it, it was unnecessary to aver it, for a plaintiff is not required to aver more than is necessary to

prove. This disposes of all objections urged to the complaint.

The motion for a new trial contained thirty-six reasons, and we will consider them in the order in which counsel have discussed them. (1) That the court erred in overruling appellant's motion for a change of venue from the county. This cause originated in Jay county. Appellant appeared to the action, and moved, on affidavit, for a change of venue from the county. His motion was sustained, and the venue was ordered changed to the Adams Circuit Court, and he was given fifteen days in which to pay costs and perfect change. He permitted the time to lapse without perfecting his change of venue, and the court afterwards taxed all costs up to that date, to him. Section 417 Burns 1894, provides that "only one change of venue shall be granted to the same party from the county," etc. This statute has often been construed, and the rule deduced from the unbroken line of authorities is that when one change is allowed or granted, whether it is perfected or not, the party who asked it can have no other change. The making of the order ends his right. He has then had the one change of venue allowed him, whether he avails himself of it or not. When a party applies to a court for a change of venue, it must be presumed that the application is made in good faith, and not for delay, but because the party asking it really believes he can have a fairer trial elsewhere. *Michigan, etc., Ins. Co.* v. *Naugle,* 130 Ind. 79; *Musselman* v. *Pierce,* 40 Ind. 120; *Mershon* v. *State,* 44 Ind. 598; *Shriver* v. *Bowen,* 57 Ind. 266; *Musselman* v. *Pratt,* 44 Ind. 126; *Hutts* v. *Hutts,* 62 Ind. 240; *Indianapolis, etc., R. Co.* v. *Smythe,* 45 Ind. 322.

(2) That the court erred in permitting appellant to answer the following question, while testifying for appellee, viz.: "How much land do you own, Mr. Gemmill, in the farm on which you live," etc. In cases of this character it is proper to inquire as to the financial condition of the

defendant, and this question was directed to that fact. Such financial condition is a matter pertinent to the issue, which the jury may consider in awarding damages, if they find for the plaintiff. In *Shewaller* v. *Bergman,* 123 Ind. 155, the court, by Elliott, J., on page 159, said: "In an action by a woman for her own seduction, it is proper to give evidence of the financial standing of the defendant," citing *Wilson* v. *Shepler,* 86 Ind. 275; *Clem* v. *Holmes,* 33 Gratt. 722; *Bennett* v. *Beam,* 42 Mich. 346, 4 N. W. 8, 36 Am. Rep. 442, and note. Again, in *White* v. *Gregory,* 126 Ind. 95, the court said: "Evidence of the pecuniary condition of the appellant [who was the defendant below] was admitted, and this is complained of. The authorities are not uniform upon the subject of the admissibility of such evidence,, but the rule as settled in this State allows of its reception. The ground upon which such evidence is received is, that actions for seduction are given not only as a means of compensating the injured party but for the punishment of the seducer as well, and that what might be an adequate punishment to one person might be no punishment to another of great wealth. Besides, the pecuniary circumstances and situation of the seducer may have contributed largely with other artifices, persuasions, promises and professions employed, to accomplish the ruin of his victim." See, also, *Lavery* v.*Crooke,* 52 Wis. 612, 9 N. W. 599, 38 Am. Rep. 768; *Gruble* v. *Margrave,* 3 Scam. 372, 38 Am. Dec. 88; *White* v. *Murtland,* 71 Ill. 250; *Rea* v. *Tucker,* 51 Ill. 110, 99 Am. Dec. 539.

(3) The question presented by the third reason for a new trial relates to the same subject-matter as the one we have just disposed of, and need not be further noticed.

The fourth to thirty-first reasons for a new trial, except the eighteenth and twenty-eighth, question the ruling of the court in admitting, and refusing to admit, and in refusing to strike out certain specified evidence. Counsel for appellant have taken forty-three pages of their very lengthy

brief to discuss these several questions, and to attempt to take them up *seriatim* and dispose of them in the order in which they are discussed would extend this opinion to an unreasonable length, without corresponding fruitful benefits. We have, however, examined every question there presented, which runs through a record of over 1,000 pages, and we are unable to reach the conclusion that in the admission and rejection of any of the evidence complained of the court committed any reversible error. Appellant took the deposition of one Jennie Walker, which was offered and read in evidence. At the taking of the deposition, the appellee appeared by counsel and cross-examined and re-cross-examined the witness. The appellant's counsel offered the deposition at the trial, and read the examination in chief. Thereupon counsel for appellee demanded the right to read the cross and re-cross-examination, to which appellant objected, and the objection being overruled, counsel for appellee read to the jury the cross and re-cross-examination. This action of the court is assigned as the eighteenth reason for a new trial. Appellant argues that as it was his deposition he had the right to read all of it, and hence it was error to permit appellee to read the cross and re-cross-examination. In support of this argument, our attention is called to the case of *Scott* v. *Indianapolis Wagon Works,* 45 Ind. 75, upon which appellant relies. In that case plaintiff took the deposition or examination of the defendant, under the statute. Upon the trial, the plaintiff (appellee), over the objection of defendant (appellant), was permitted to read the examination in chief, without reading the cross-examination, and it was stated by counsel at the time that the defendants might read the cross-examination when they came to introduce their evidence. The court said this was not a proper practice, but as the record showed that all that part of the deposition which the plaintiff did not read was read by the defendants when they came to adduce their evidence, there was no substantial error with

reference to the reading of the deposition. In the case we are considering, it appears from the record that the entire deposition of Jennie Walker was read in consecutive parts, and that it all went to the jury as a whole. While it may be the better practice for the party offering a deposition to read the whole, yet we are not prepared to say that it is error for it to be read as it was in this case. Courts of last resort do not reverse causes for irregularities, unless such irregularities amount to errors which have prejudiced the rights of the complaining party. As all the deposition was read to the jury, and read in consecutive parts, we are clear that the irregularity complained of did not rise to the magnitude of an error, for which the judgment should be reversed.

At the time this action was pending in the Jay Circuit Court, there was also another action by appellee against appellant for a breach of an alleged marriage contract. In the latter action, appellant took the deposition of one Joseph Gemmill, and upon the trial of this case offered to read in evidence a copy of that deposition, to which appellee objected, and the objection was sustained. This action of the court is challenged by the twenty-eighth reason for a new trial. The offer to read such copy was based upon an alleged agreement between the attorneys to that effect. As to whether there was such agreement must be determined from the affidavits *pro* and *con.* This question was presented to the trial court upon such affidavits; and from them the court could have, and, doubtless did arrive at the conclusion that there was no such agreement. The court having passed upon the question, we could not disturb its ruling, unless we could say that it abused its discretion, and this we can not do.

The thirty-second, thirty-third, thirty-fourth, and thirty-fifth reasons for a new trial call in review the action of the court in giving, in refusing to give, and in modifying, and giving as modified, certain instructions. Before the beginning of the argument, counsel for appellee requested all

instructions to be given in writing, and tendered a series of instructions, numbered consecutively from one to thirty-one, and asked that they be given. Of these the court gave all but the fifth, eighth, ninth, and thirty-first. To the giving of the other instructions tendered by the appellee, the appellant excepted, and has brought the instructions, together with the exceptions noted thereon and signed by the judge, into the record by a bill of exceptions. Counsel have discussed at great length their objections to these several instructions, and, to follow that discussion and give the substance of the instructions, which we would have to do to present and discuss them intelligently, would extend this opinion to an unreasonable length. The first, second, third, fourth, sixth, seventh, tenth, eleventh, and twelfth of these instructions are confined to explaining to the jury that they are the judges of the credibility of the witnesses; how they may determine such credibility; that they are to determine the weight of the evidence, and how to determine it; and how the preponderance of the evidence may be determined. We are unable to see any objection to the instructions indicated, and the criticisms upon them are not well grounded. In not a single instance did the court invade the province of the jury. The thirteenth, fourteenth, fifteenth, and twenty-fourth instructions directed the minds of the jurors to the question of damages in case they should find for the appellee, and fully covered the law applicable thereto, as to the measure of damages. Counsel for appellant have not cited a single authority to support their argument, and a careful examination of the instructions leads us to the conclusion that they fairly and fully state the law governing the question of damages in cases of this character. By the sixteenth, seventeenth, eighteenth, twenty-first, and twenty-third instructions, the court told the jury what acts would constitute seduction, within the meaning of the law, and they fully covered the subject. The instructions upon this subject are particularly clear, direct, concise, and to the

point. In the nineteenth, twentieth, and twenty-fifth instructions, the court told the jury that the law presumed that appellee was a virtuous woman up to the time of the acts complained of, and that evidence of specific acts of immorality, if any, prior to that time could only be considered by them for two purposes, if they found that appellant seduced her, to wit: (1) In mitigation of damages, and (2) as tending to show she was not seduced as alleged. That a person of previous unchaste character may recover damages for her own seduction, and that her character before seduction may be shown in mitigation of damages seems to be well settled. *Smith* v. *Milburn,* 17 Iowa 30; *Robinson* v. *Powers,* 129 Ind. 480. The law presumes in favor of a woman's chastity. *Robinson* v. *Powers, supra; State* v. *McClintic,* 73 Iowa 663, 35 N. W. 696.

In the twenty-sixth instruction, the court told the jury that if they found that previous to the alleged seduction appellee had sexual intercourse with another man or men and thereafter reformed and resolved to lead a virtuous life, and was of good repute, etc., and that if appellant did thereafter seduce her, and as the fruit of that seduction she was begotten with child, then their verdict should be for the appellee, and they should award her such damages as would fully compensate her for her loss of reputation, for the pain and suffering of body, and anguish of mind, caused by the seduction, and the begetting and birth of the child. While more than one proposition of law is embraced in this instruction, it is not bad for that reason. That a woman may stray from the paths of virtue, and subsequently reform, and thereafter lead a virtuous life, there is no doubt. While in this condition, she may also be seduced, and as a result of such seduction recover such compensatory damages as she may suffer. As a part of the measure of such damages, she may recover for her anguish of mind and her pain and suffering incident to bearing and giving birth to a child, the fruit of such seduction. These propositions

are amply sustained by the authorities. *Robinson* v. *Powers,* 129 Ind. 480; *Patterson* v. *Hayden,* 17 Ore. 238, 3 L. R. A. 529, 11 Am. St. 822; *Stoudt* v. *Shepherd,* 73 Mich. 588, 41 N. W. 696; *Smith* v. *Milburn,* 17 Iowa 30; *Weaver* v. *Bachert,* 2 Pa. St. 80, 44 Am. Dec. 159, note 171; *McCoy* v. *Trucks,* 121 Ind. 292; *Gunder* v. *Tibbits,* 153 Ind. 591.

There is evidence in the record from which the jury could find that appellant, by means of a promise of marriage, by his arts, wiles, persuasions, and solicitations, induced appellee to have sexual intercourse and that subsequent to the first act of intercourse, by the same inducements, the act was repeated several times. In the twenty-seventh instruction the jury were told that if they found such acts to have taken place in the manner alleged, that they might regard said several acts of intercourse as constituting elements of one wrong. This instruction is in line with the authorities, and it correctly stated the law. *Haymond* v. *Saucer,* 84 Ind. 3; *Gunder* v. *Tibbits, supra.* In the latter case many authorities are collected and cited upon this question, and we refer to them without comment.

Any question as to the twenty-eighth, twenty-ninth, and thirtieth instructions is waived by appellant by the failure of counsel to discuss them. The record shows that the court refused to give the thirty-first instruction tendered by appellee. Why counsel discuss it, and complain that it was error to give it, we are not advised. The record speaks absolute verity, and as it shows that the instruction was not given, we cannot consider it as having been given. The appellant tendered and asked to be given to the jury twenty-three instructions. Of these the court gave the first, second, third, fourth, fifth, sixth, thirteenth, fourteenth, and fifteenth, and refused to give the seventh, eighth, eleventh, twelfth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, and twenty-second, and gave as modified the ninth and tenth.

The thirty-third reason assigned for a new trial was that the court erred in refusing to give the instructions above indicated as tendered by appellant. We are satisfied that there was no error in this refusal. Without being specific, it is sufficient to say that some of the instructions refused had been substantially covered by other instructions, and, while they may have stated the law correctly, it was not error to refuse them. *Hamilton* v. *Hanneman,* 20 Ind. App. 16; *Siberry* v. *State,* 149 Ind. 684; *Dale* v. *Jones,* 15 Ind. App. 420; *Eureka, etc., Co.* v. *Bridgewater,* 13 Ind. App. 333; *Lake Shore, etc., R. Co.* v. *Anthony,* 12 Ind. App. 126.

The other instructions refused were properly refused, because they did not correctly state the law applicable to the facts. The modification of instruction number ten, as tendered by appellant, and giving it as modified, does not present any question, as the record does not show the modification, and appellant's counsel admit this. This disposes of all questions arising under the instructions that have been discussed. Construing the instructions as a whole, we are of the opinion that they correctly state the law applicable to the pleadings and the evidence, and while we might not be able to approve one or more of them, standing alone, yet it is apparent that the jury was not in any sense misled. In such case, even if one or more of the instructions standing alone did not correctly state the law, it is not cause for reversal. *Shields* v. *State,* 149 Ind. 395; *Todd* v. *Danner,* 17 Ind. App. 368; *Archibald* v. *Harvey,* 23 Ind. App. 30; *Lofland* v. *Goben,* 16 Ind. App. 67; *Masons, etc., Assn.* v. *Brockman,* 20 Ind. App. 206.

The thirty-fifth and thirty-sixth reasons for a new trial are, (a) that the verdict is not sustained by sufficient evidence, and (b) that the verdict is contrary to law. These two reasons present substantially the same question, and both depend on the evidence. There is an abundance of evidence to support every material averment of the complaint,

and hence the evidence is sufficient to sustain the verdict, as we have held that the facts pleaded constitute a cause of action. Upon some questions there is a conflict in the evidence, but this court, in such case, does not weigh the evidence. There being evidence to support the verdict and judgment, we are bound by the conclusion reached by the trial court in rendering judgment thereon. We refrain from citing authorities in support of this familiar rule.

We do not find any reversible error in the record. Judgment affirmed.