BRIDGET KELLEY *vs.* JOHN RILEY.

Exceptions filed by the defendant, after verdict for the plaintiff, may be allowed, notwith-
standing the defendant's death meanwhile, although the action does not survive; and,
if they are overruled, judgment may be rendered as of the day when the verdict was
returned.

In an action by a woman for breach of a promise of marriage, it is no defence that the de-
fendant was married at the time of the promise, if the plaintiff was ignorant thereof.

In an action by a woman for breach of a promise of marriage, evidence that she was
seduced by the defendant under promise of marriage is admissible on the question of
damages.

CONTRACT for breach of promise of marriage. The declara-
tion did not allege special damage.

At the trial in the superior court, before *Brigham*, C. J., evi-
dence was introduced tending to show that the defendant was
a married man at the time of the promise. The defendant re-
quested the judge to rule that, if the defendant was married at
the time of the promise, the action could not be maintained; but
he declined so to rule, and ruled that the action could be main-
tained, although the defendant was married at the time of the
promise, if the plaintiff was ignorant thereof.

The plaintiff offered evidence tending to show that, induced by
the defendant's promise of marriage, she submitted to sexual in-
tercourse with him, and that he got her with child, of which she
had been delivered and which was now living. The defendant
objected to the admission of this evidence; but the judge admit-
ted it, as affecting the measure of damages.

In submitting the case to the jury, the judge instructed them
as follows:

"Promises of marriage, not often being made in the presen̄ce
of witnesses or in writing, have usually, in cases of this nature,
been proved by circumstantial evidence. As the promise of the
plaintiff is the consideration of the promise of the defendant,
both must be proved in order to support the action; and each
promise may be established by the same species of proof; and
the conduct and deportment, as well as the language of the par-
ties, towards each other, may furnish satisfactory evidence of the

fact that a mutual promise of marriage has been made between them, that is, a promise of marriage by one and a corresponding promise of marriage by the other.

" In determining what sum of money would reasonably indem-- nify and compensate the plaintiff for a breach of the defendant's contract with her, the jury may consider, in addition to her ex- penditure in preparing, the disappointment of her reasonable expectations, and inquire what she has lost by her disappoint- ment, and for that purpose consider among other things what would be the money value or worldly advantage (separate from considerations of sentiment and affection) of a marriage which would give her a permanent home, and the advantage of such a domestic establishment as would be suitable to her as the wife of a person of the defendant's estate and station in life. The jury ought also to consider whether her affections were in fact impli- cated, and whether she had become attached to the defendant, and if such was the fact, the wound and injury to her affections would be an additional element in the computation of her dam- age ; and also to consider whatever mortification, pain or distress of mind she suffered, resulting from the discovery of the defend- ant's inability to marry, by reason of his living wife, or his refusal to marry her within a reasonable time after the contract was made between them, if he was not disabled from doing so by rea- son of a living wife. And if, while the parties were mutually promised in marriage, and intending and expecting marriage in a short time, the defendant solicited, in consideration of such inten- tion and expectation, and the plaintiff permitted, in consideration of such expectation and intention, sexual intercourse with her, whereby she became pregnant with a child, which was born alive, and is now living, these facts may be considered by the jury in computing damages, so far as they tend to aggravate and increase the disappointment, mortification, pain or distress of mind, which she has suffered by reason of the defendant's breach of contract."

A verdict for the plaintiff was returned September 23, 1870, and the defendant alleged exceptions ; on September 27 the plain- tiff moved for judgment ; on October 1 the judge extended the time for filing the exceptions till October 3, on which day they

were filed, and on the same day, a few hours afterwards, the defendant died. The plaintiff then asked for judgment on her motion, and contended that the defendant's exceptions ought not to be allowed, but on October 14 the attorney who appeared for the defendant at the trial presented the exceptions for allowance, and on October 17 the judge allowed them. The defendant died intestate, and no steps towards taking out administration on his estate were had before the filing [the allowance?] of the exceptions. To the refusal of the judge to grant her motion, and to his allowance of the defendant's exceptions, the plaintiff alleged exceptions.

*J. N. Marshall*, for the plaintiff.

*G. Stevens*, for the defendant.

COLT, J. Both parties present exceptions. The defendant died after his exceptions, taken during the trial of the case to the jury, were filed in the court below, and before they were allowed by the presiding judge. The action could not be continued to summon in the administrator, because, as no special damage is alleged, it does not survive. The authority of the attorney employed by the defendant of course terminated with his death. *Stebbins* v. *Palmer*, 1 Pick. 71. *Smith* v. *Sherman*, 4 Cush. 408. The plaintiff under these circumstances excepts both to the allowance of the defendant's exceptions, and the refusal of the judge to order judgment on the verdict, upon her motion, which was filed before the defendant's death.

As a matter of practice, at common law, as well as under the provisions of the Gen. Sts. *c.* 133, § 7, and *c.* 115, § 14, judgment will be entered on the verdict on motion, as of a preceding day or term of the court, whenever an action, continued or postponed for the purpose of obtaining a disposition thereof, which may relieve a dissatisfied party from a verdict, would otherwise fail by the death of a party to it. So if the death occur after verdict, delay during the time taken for the argument of law questions upon which the validity of it depends, or for advisement thereon, will not be suffered to deprive one of the benefits to which he appears to have been justly entitled under it. *Springfield* v *Worcester*, 2 Cush. 52. *Currier* v. *Lowell*, 16 Pick. 170.

This case comes within these rules. The defendant's exceptions were presented and filed before the death of the defendant, judgment on the verdict was thereby delayed, and the court in now rendering judgment will go back to the time when it would have been rendered if no action had been taken to prevent it.

This all proceeds on the supposition that the verdict is one which is open to no legal objection. When objections are suggested by exceptions regularly taken and filed, then it is manifestly proper that the order for judgment, as of a prior day or term, should not be made until the exceptions are regularly disposed of by a decision in favor of the verdict. And although technically there can be no appearance for a deceased party, yet this court will pass upon the questions so submitted, and hear suggestions as to their merits, from any one who holds the office of an attorney within the court.

The exceptions of the defendant were therefore properly allowed, and the motion for judgment properly denied, for the time, as premature.

It remains to dispose of the exceptions of the defendant, taken at the trial. The court was asked to rule that, if the defendant was a married man at the time of his promise, the plaintiff could not be injured by a failure to perform, and though she had no knowledge of that fact at the time, could not maintain this action. This was properly refused. The defendant is not permitted to escape responsibility on the ground of his present legal inability to perform a promise of marriage to an innocent party. The damages to the plaintiff are certainly not diminished by the consideration that the promise was made under such circumstances. The strict rule that a consideration to support a promise is insufficient, if its performance is utterly and naturally impossible, is met by the suggestion, that even if the future performance here is to be treated as utterly impossible, yet the detriment or disadvantage which must necessarily result to the plaintiff in relying for any time on the promise affords sufficient consideration to support the defendant's contract. 2 Parsons on Contracts, (5th ed.) 67. *Wild* v. *Harris*, 7 C. B. 999.

The defendant also insists that the evidence of seduction was not admissible in aggravation of damages. But in a recent case the contrary has been held by this court, on the ground that compensation to the plaintiff for the injury she has received by the breach of the contract cannot be fully reached without taking into account the situation in which she is left by the defendant's act. *Sherman* v. *Rawson*, 102 Mass. 395. The instructions actually given by the learned judge, as to the nature of the evidence by which the promise was to be proved, and the elements to be considered by the jury in estimating the damages, were full and accurate.

The defendant's exceptions are accordingly overruled, and the plaintiff may now therefore renew her motion in the superior court, where the case remains, that judgment be rendered as of the day and term when the verdict was returned.

*Ordered accordingly.*