## John M. Bennett v. Mary E. Beam.

*Breach of promise—Damages for seduction—Tender of performance after beginning of suit.*

A declaration for breach of promise averred a promise to marry plaintiff (1) on request; (2) within a reasonable time; and (3) generally. *Held* that evidence was admissible to prove a promise to marry when certain buggies were finished, at all events where this promise was only a part of what had passed ·between the parties, on which the suit was based.

Where a promise is made to be performed when certain work is completed, but no time is stated for its completion, the law implies a reasonable time.

In a breach of promise suit brought by a woman, evidence of the effect of the alleged refusal to marry, upon her mind and feelings is admissible as bearing on the question of damages. So is evidence of defendant's financial standing, as it is presumed that in contracting marriage property considerations are not ignored. But in an action for the breach of an ordinary contract, such evidence is inadmissible, as it cannot affect damages.

In an action for breach of promise brought by a woman, the fact that she was seduced by defendant under a promise of marriage should have great weight in fixing damages.

Courts will rarely interfere with any damages which a jury may give on account of seduction.

In a suit brought by a woman for breach of promise, evidence of interviews between her father and the defendant in her absence is properly excluded; but where on cross-examination of the plaintiff evidence of an interview between the plaintiff and her counsel was called out, it was *held* proper to refuse to strike out testimony referring to an offer of settlement made by the defendant's brother.

In an action by a woman for breach of promise, it is inadmissible for the mitigation of damages to cross-examine the plaintiff as to whether she is then willing to marry the defendant, or to examine the defendant as to whether he had not notified plaintiff's counsel after the action was begun, that he was then ready to perform his agreement to marry.

Error to Wayne. Submitted October 17, 1879. Decided January 7, 1880.

Trespass on the case for breach of promise. Defendant brings error.

*Moore· & Moore* for plaintiff in error. In a breach of promise suit defendant may show offers of marriage before or after the beginning of suit, in mitigation of damages, *Kelly v. Renfro,* 9 Ala., 329; refusal to proceed with a marriage because of a rumor of misconduct by the other party was considered proper in mitigation of damages, *Baddelly v. Mortlock,* 1 Holt, 151.

*Chas. B. Lothrop* and *G. V. N. Lothrop* for defendant

in error, as to sufficiency of counts in the declaration cited *Potter v. Deboos*, 1 Stark. N. P., 82; *Phillips v. Crutchley*, 1 M. & P., 239: 17 Eng. C. L., 605; an offer to renew or execute a contract after refusal should be no defense, 2 Pars. Cont., 68; and plaintiff in a breach of promise suit may decline further attentions from defendant, *Southard v Rexford*, 6 Cow., 254; evidence of facts occurring after the beginning of suit cannot be given in aggravation or mitigation of damages, Sedgwick on Damages, 423: *Greenleaf v. McColley*, 14 N. H., 304; *Miller v. Hayes*, 34 Ia., 498.

MARSTON, C. J. The action in this case was brought to recover damages for breach of a contract to marry.

I. It is alleged as error that the plaintiff was allowed to prove a promise to marry when certain buggies, which were in process of manufacture, were finished, while the declaration alleged a promise (1) upon request; (2) within a reasonable time; and (3) generally.

This evidence was properly admitted. It was a part of the entire transaction of what was said by the parties, and it was for the jury to determine, not from any particular sentence or conversation, but from all the facts and circumstances of the case, the actual agreement entered into, if any, and whether the promise alleged in the declaration was proven. A particular conversation, one of several relating to the same subject-matter or a part thereof, may tend to establish an agreement other or different from that set forth in the declaration; but so long as it forms but a part, or one of several, and is otherwise admissible, it cannot be rejected because in apparent conflict with the contract alleged. To reject such evidence would be to so clip and trim the facts as to present to the jury but a meager portion thereof, while they should hear all that was said by, and what took place between the parties, relating to or fairly bearing upon the question of a promise to marry. Expressions used, when considered alone, might have a strong

tendency to prove a promise to marry at a particular time, yet when taken in connection with other facts and circumstances, the tendency might be very different. To so frame a declaration that each expression or distinct promise made would be counted on, would be of no benefit to the defendant, and would, we think, make the pleadings needlessly prolix, uncertain and misleading.

I am not satisfied but that this evidence, standing alone, would tend to support the declaration. It was of a promise to marry when certain buggies then in process of manufacture were finished. No time was then mentioned, nor did it otherwise appear when the buggies were to be finished. The law therefore would imply a reasonable time, and even if the buggies had never been made, the party could not abandon his contract on such a ground, because evidently their completion had no important bearing on the contract.

II. It is alleged as error that the plaintiff and her father were allowed to testify as to the effect of the alleged refusal to marry, upon her mind and feelings. That such evidence was admissible under the general allegations of the declaration we consider too clear to require argument. The effect upon her mind and feelings was one of the usual and natural results of the breach, and had an essential bearing upon the question of damages.

III. That it was not proper to show the financial standing of the defendant.

In this State it is a well settled legal axiom that the just theory of an action for damages, and its primary object, are that the damages recovered shall compensate for the injury sustained. There are exceptions to this rule, but it would not be claimed that this case comes within them. Now the contract for a breach of which this suit was brought, was one for a life association of interests, and it is one of the most obvious facts that the pecuniary circumstances of the defendant, as well as his social position, would largely influence any one's

estimate of the damages suffered. This would be so even if the woman had in no manner taken the man's property into account in engaging herself to him, but the law always supposes that property considerations are not ignored in these cases.

In cases like the present, what loss is it that the plaintiff has sustained by a breach of the contract? To determine this we must look at the surroundings and see what it was to which the defendant invited her. If it was to a home of poverty and a life of probable hardship and misery, the loss would apparently be small; but if it was to a home possessed of and surrounded by all the comforts and even the luxuries of life, and where her social position in the circles in which she would move by right of the marriage would be the very best, the case would be exactly the opposite, because in such case there would be abundant promise of social and domestic happiness. But beyond this the very marriage confers certain rights in the husband's real and personal estate of which she cannot afterwards be deprived except by her own consent, and she would naturally and justly look to them as her security against becoming dependent through the accidents and misfortunes of life. It is all these that the breach of the marriage contract deprives the woman of, and she is allowed to prove them, not to show that he will be able to satisfy a judgment if she obtains one, but to measure the extent of her loss.

For the breach of an ordinary contract, as for the sale and delivery of goods, the wealth of the defendant can and should have no possible bearing in the case, as it could in no way enhance or lessen the damages sustained. In such a case the damages would be ascertained according to well settled rules dependent upon the condition of the market and other circumstances which the defendant's wealth could not to any appreciable degree affect. In this case a prospective participation in the wealth of the defendant is one of those things of which the plaintiff by the breach has been deprived, and goes

therefore to the extent of the injury. *Miller v. Rosier*, 31 Mich., 478; *Kelley v. Riley*, 8 Am., 336: 106 Mass., 339. See also *James v. Biddington*, 6 C. & P., 589; *Berry v. DaCosta*, L. R. 1 C. P., 331.

In this connection it was urged that the alleged seduction of the plaintiff by the defendant was admitted to aggravate the damages, and that the court in charging the jury was too vague and general 'in saying "that fact [the seduction] should go a great way in estimating the damages."

It certainly would be somewhat difficult for the court to accurately define or prescribe just what effect should be given to such an act. That proof of the fact is admissible and may be considered by the jury in awarding damages in an action like the present, is not questioned. The damages which the jury may give on account of the seduction rest almost wholly with them, the court but seldom interfering because supposed to be excessive.

That the act of seduction, under a promise of marriage, should go a great ways with a jury in estimating the damages, ought to be true both in law and fact. In many cases the loss sustained from a breach of the agreement to marry may be but slight indeed; but never can this be the case where the life-long blight which seduction entails enters into the case. Respectable society inflicts upon the unfortunate female a severe punishment for her too confiding indiscretion, and which the marriage would largely, if not wholly, have relieved her from. The fact of seduction should therefore go a great ways in fixing the damages, as in no other way could amends be made the plaintiff for the injury she sustained, or the defendant be properly punished for his aggravated offense. It would seem also to be in full accord with the sense of justice implanted in the heart of every right, high-minded person, and therefore with the reason of the common law. *Sheahan v. Barry*, 27 Mich., 217.

IV. There was no error committed in rejecting or striking out testimony relating to interviews between the defendant and the father of the plaintiff when she was not present; nor in 'refusing to strike out the evidence introduced, referring to an offer of settlement made by defendant's brother. This last was called out on re-direct examination as a part of an interview between plaintiff and her counsel, first inquired about and gone into by counsel for defendant, on cross-examination of the witness.

V. On cross-examination of the plaintiff, she was asked if she was then willing to marry the defendant. This was objected to, and the objection sustained. The defendant was called as a witness in his own behalf, and when examined, was asked by his counsel if he had not sent notice to plaintiff's counsel, shortly after the action was commenced, that he was then ready to perform the agreement to marry, on his part. This also was rejected, and upon these error is alleged. It was urged on the argument that this evidence should have been received in mitigation of damages, and we will consider it in this light.

The offer made was not to show that he had or supposed he had good and sufficient reasons for his refusal to marry, and that he had, therefore, acted in entire good faith in so doing.

The contract of marriage is one so dependent upon affection that where this is wanting a union would be more likely to add to than lessen the damages; instead of bringing happiness to the parties, it would be more likely to entail life-long misery on one or both.

The affection which the plaintiff may have had for the defendant, and under the influence of which she may even eagerly have accepted a matrimonial alliance with him, may by his subsequent conduct have been turned into loathing and contempt, so that a marriage which at a certain time would have been to her one of the most desirable of events, would at a subsequent period, even in thought, be repulsive.

A supposed virtuous man of wealth, refinement and respectability, gains the affections of a young lady, and under a promise of marriage accomplishes her ruin, then abandons her and enters upon a life of open and notorious profligacy and debauchery, and when sued he offers to carry out his agreement—offers himself in marriage, when any woman with even a spark of virtue or sensibility would shrink from his polluted touch.  To hold that the offer of such a skeleton and refusal to accept, could be considered even in mitigation of damages, would shock the sense of justice and be simply a legal outrage.    Such an offer could in no way atone for the past, or have any tendency to show that the defendant had not, and was not acting in a most heartless and outrageous manner; yet the principle which would admit the evidence rejected in this case would admit it also in the one supposed. The evidence was very properly rejected.

We have examined the several requests to charge, and the charge as given, and from the record in this case discover no error.

The judgment must be affirmed with costs.

The other Justices concurred.