## ELIZABETH E. WATSON v. DANIEL M. WATSON.

*Action for seduction—Order of proof—Previous familiarities—Neglect to make complaint—Defendant's wealth and general reputation—Statute of limitations.*

1. In an action for seduction it is within the discretion of the trial judge to allow the plaintiff, before proving the seduction, to show that there had previously been acts of improper familiarity.

2. Plaintiff in an action for seduction claimed as part of her case that she had been gotten with child at a certain time, and that the illicit intercourse was kept up for some time afterwards. *Held*, that proof was admissible of acts of previous familiarity as bearing upon a previous seduction and as giving probability to her subsequent testimony that intercourse had been continuous.

3. An action for seduction will lie where the victim's will is overcome by the controlling influence of defendant's, especially if he holds a relation giving him authority over her.

4. Whether a case is of rape or of seduction bears upon the victim's omission to make immediate outcry or complaint, but that fact does not necessarily, as matter of law, discredit the charge in a case of seduction. It is open to comment, however, by counsel and perhaps by the judge.

5 When the truth of a charge is investigated in the light of the conduct of parties concerned, the probabilities as to what their behavior would have been if the charge had been true, must be considered.

6. A man was sued by his adopted daughter for seduction. *Held*, that she could not show, as an independent fact, that he had told her he had concealed a sum of money for her of which he wished her quietly to take possession in case he died before her.

7. Conduct which will reasonably and naturally warrant entirely opposite deductions ought not to be shown as bearing upon the guilt of a party.

8. Damages for seduction cannot be aggravated by evidence of what the defendant had told his victim he was worth; or by any evidence of his wealth unless perhaps such as is inferable from his general standing in the community.

9. Defendant in a civil action for seduction cannot show, by way of defense, that his general reputation for chastity has always been good.

10. The practice of asking instructions upon the evidence involving no question of law but relating only to the weight and credibility of the proofs, is discouraged.

11. An infant's right of action for seduction is not barred by the statute of limitations until after she has reached her majority, if the circumstances are such that she has to bring suit in her own name and not by another.

Error to Kent. (Montgomery, J.) Feb. 8.—March 6.

CASE. Defendant brings error. Reversed.

*John T. Holmes* and *Fred A. Maynard* for appellant. In an action for seduction, subsequent acts of intercourse cannot be shown : *People v. Clark* 33 Mich. 115 ; *People v. Jenness* 5 Mich. 305 ; *Templeton v. People* 27 Mich. 501 ; *People v. Schweitzer* 23 Mich. 304; nor can defendant's wealth : *Myers v. Malcolm* 6 Hill 292 ; 2 Greenl. Ev. § 55 ; 2 Stark. Ev. (7th Am. ed.) 772 ; 2 Phil. Ev. ( Cow. & Hill's Notes ) 218 ; Abb. Trial Ev. 686 ; Sedgwick on Damages 544 ; Stevens Nisi Prius 23-56 ; *LaSalle v. Thorndike* 7 Ill. App. 282 ; unless for the purpose of compensatory damages : *Dush v. Fitzhugh* 2 Lea 307 ; but the defendant's good character may be shown : *People v. Garbutt* 17 Mich. 26 ; the fact that a witness has given a different account of a transaction to which he has sworn does not of necessity impeach his veracity or memory : 1 Greenl. Ev. § 469 ; 1 Stark. Ev. 48 ; *Conrad v. Griffey* 11 How. 491 ; *Robb v. Hackley* 23 Wend. 50 ; *Craig v. Craig* 5 Rawle 91 ; *Berkely Peerage Case* 4 Camp. 401 ; *Morrissey v. Ingham* 111 Mass. 66 ; *Chapin v. Marlborough* 9 Gray 244 ; *Bacon v. Charlton* 7 Cush. 586 ; Whart. on Ev. § 1100 ; *Threadgool v. Litogot* 22 Mich. 272 ; *Howe v. Thayer* 17 Pick. 97 ; *Vanneter v. Crossman* 42 Mich. 469 ; concealment of seduction is against the party complaining of it : 3 Greenl. Ev. (13th ed.) § 212 ; *Turner v. People* 33 Mich. 383 ; see *Higgins v. People* 58 N. Y. 379 ; it is material whether the plaintiff was the victim of seduction or of rape : Cooley on Torts 228, 235 ; 2 Add. on Torts 1090 ; 2 Greenl. Ev. § 571 ; *Abrahams v. Kidney* 104 Mass. 222 ; *Blanchard v. Ilsley* 120 Mass. 487 ; *Bartley v. Richtmyer* 4 Comst. 38 ; *White v. Nellis* 31 N. Y. 405 ; *Leucker v. Steilen* 89 Ill. 545 ; if seduction is not proved, damages for seduction should not be given : *Hill v. Wilson* 8 Blackf. 123 ; *Delvee v. Boardman* 20 Iowa 446.

*Godwin & Earle* for appellant. In an action of seduction subsequent intercourse may be shown as *res gestae*: *Thompson v. Clendening* 1 Head 287; *Wood v. Georgia* 48 Ga. 192; *Hewitt v. Prime* 21 Wend. 82; *Klopfer v. Bromme* 26 Wis. 372; *Davidson v. Goodall* 18 N. H. 423; *White v. Murtland* 71 Ill. 250; and defendant's pecuniary circumstances: 3 Sutherland on Damages 742; *Herring v. Jester* 2 Houst. 66; *Parker v. Monteith* 7 Oreg. 277; but not his good reputation; 15 Cent. L. J. 428; 16 Cent. L. J. 202; *Delvee v. Boardman* 20 Ia. 446; *Maguinay v. Saudek* 5 Sneed 146; action for seduction will lie even though committed forcibly: *Kennedy v. Shea* 110 Mass. 147; *Damon v. Moore* 5 Lans. 456; *Hogan v. Cregan* 6 Robert. 138.

COOLEY, C. J. This is an action on the case to recover damages for alleged seduction. The plaintiff had been living in the family of the defendant as his adopted daughter from 1872 to 1881, being when she went there twelve years of age. She claims to have been seduced by him in the summer of 1875. She submitted to him, according to her testimony, unwillingly, and under the influence of the control which he had obtained over her by means of the adopted relation. A child was born to her in July, 1881, which she says was the fruit of their intercourse. This suit was begun October 31, 1881. The defendant denies that sexual intercourse ever took place between him and the plaintiff. The case has twice before been in this Court. See 47 Mich. 427 : 49 Mich. 540. On the trial on the merits, after the preliminary questions had been determined in this Court, the plaintiff recovered judgment for $4000 damages.

Before the plaintiff had given evidence of the seduction she was permitted to prove acts of improper familiarity on the part of the defendant occurring in 1878. This was objected to as being premature in that stage of the trial, and also as having no tendency to prove a previous seduction. So far as the question related to the order of proof, we think it was addressed to the discretion of the trial judge. The other branch of the objection was untenable also. It is no doubt true, as has been urged, that such acts tend rather to lend probability to the charge of subsequent intercourse than to

prove a previous seduction; yet, as in this case the illicit intercourse is alleged to have been kept up for some time after 1878, and it was a part of the plaintiff's case that she was begotten with child by the defendant in 1880, the acts of familiarity which were testified to in 1878 were not without importance. They tended to show an existing condition of things such as the plaintiff had set up, and rendered more probable the story of continuous intercourse, to which she afterwards testified.

It was urged by the defendant that on the evidence of the plaintiff the action could not be maintained, because as she claimed, the intercourse was accomplished by force, and was therefore not seduction, but rape. But the plaintiff's evidence did not make out a rape: it made out only that her will was overcome by the defendant's superior will, which had controlling influence because of the parental relation which he had assumed towards her. If the case were in fact one of rape, there would be very good authority for holding that the action might be sustained notwithstanding the fact that the intercourse was accomplished by force. *Kennedy v. Shea* 110 Mass. 147: s. c. 14 Am. Rep. 584; *Damon v. Moore* 5 Lans. 454; *Lavery v Crooke* 52 Wis. 612: s. c. 38 Am. Rep. 768. It was also urged that suspicion was cast upon the story of the plaintiff by the fact that she did not make immediate complaint when the wrong was first committed; and instructions to the jury were requested to that effect. We think there was no error in refusing them. Counsel was at liberty to comment upon the fact if he deemed it advisable to do so, and perhaps the judge also; but the judge could not lay down any rule of law in respect to it which would benefit the defense. Obviously, as respects immediate complaint, rape and seduction present very different considerations. When the truth of a charge is being investigated, in the light of the conduct of parties concerned, we are to consider what the behavior would naturally have been had the charge been true; and while all would probably agree that a virtuous woman who had been ravished would be likely to make immediate outcry, or disclosure, very different conduct would be

looked for in case of seduction. The woman seduced is more likely to reveal her shame only when concealment is no longer possible, especially where the seducer holds towards her some family relation.

One of the assignments of error concerns the evidence given by the plaintiff, that at one time, not very distinctly specified, but which would seem to have been in the winter before the birth of the child, the defendant informed her that he had concealed four hundred dollars in a specified place, which she was to have in case he should die before her, and in that event he desired her to take it, but to let no one know about it. It does not appear from the evidence that this conditional gift was the result of any previous understanding or promise, or that it had any connection whatever with the previous or continuing sexual intercourse. Neither was it shown that the defendant then knew the plaintiff was in the family way. If we believe the plaintiff's charge, we should naturally attribute such a gift by the defendant to a desire to make some compensation for the wrong done. If we believe the defendant truthful, the conditional donation may, on the other hand, be referred to very proper sentiments. The plaintiff had, at that time, been for eight years a member of defendant's family, occupying the place of a child, though not formally adopted. If she survived him the law made no provision for her as a child, and this small gift he might very well make, and probably ought to make, if their relations had been perfectly innocent. The secrecy in the case might seem to require explanation; but there might be very good reasons for making such a gift in such a way that it could not become the subject of possible family contention after his death. The act of making it was therefore apparently as consistent with good motives and honorable conduct as with a consciousness of crime; and it naturally indicated crime only to a mind already convinced. Conduct from which such opposite deductions are not only admissible, but would be natural, according to the prepossessions we may have respecting the person, ought not to be proved. The very reception of the

evidence as tending to prove guilt casts a suspicion upon the act sworn to which it cannot be seen even probably to deserve; and it may, consequently, work great injustice. The exception is well taken.

When the plaintiff was giving evidence on her own behalf she was asked what the defendant had told her respecting his pecuniary circumstances. Objection was made to the question, but she was allowed to answer, and she stated that he had told her he was worth twenty thousand dollars. The avowed purpose of giving this evidence was to swell the damages. In the instructions to the jury the trial judge did not pointedly call their attention to it, but he instructed them that, in awarding damages for the shame and ignominy which the plaintiff has suffered by reason of the wrongful act of the defendant, they might award to the plaintiff such sum as their fair and deliberate judgment and discretion should dictate, having regard to all the circumstances of the case—the seduction, and relation of the parties before and at the time of the alleged wrong to the plaintiff. The jury must, therefore, have understood they were at liberty to give damages with some regard to the amount of the defendant's pecuniary means.

If this were an action for breach of promise of marriage the wealth of the defendant would have been a fair subject of inquiry; but this is for the obvious reason that the plaintiff's loss in such a case has direct relation to the means of the man she was to marry. *Miller v. Rosier* 31 Mich. 475; *Bennett v. Beam* 42 Mich. 346: s. c. 36 Am. Rep. 442; *Kelley v. Riley* 106 Mass. 339: s. c. 8 Am. Rep. 336; *Kniffin v. McConnell* 30 N. Y. 285. In several cases it has been held that similar evidence is admissible in actions brought for malicious injuries to plaintiff's reputation. *Karney v. Paisley* 13 Iowa 89; *Huyner v. Cowden* 27 Ohio St. 292: s. c. 22 Am. Rep. 303; *Humphries v. Parker* 52 Me. 502; *Bennett v. Hyde* 6 Conn. 24, somewhat qualified in *Case v. Marks* 20 Conn. 248; *Hosley v. Brooks* 20 Ill. 115. In *Holmes v. Holmes* 64 Ill. 294, it appears to have been received by the court with some degree of dissatisfaction, and in

Alabama it is rejected. *Donnell v. Jones* 13 Ala. 490; *Seay v. Greenwood* 21 Ala. 494; *Ware v. Cartledge* 24 Ala. 622. In this State the admission of such evidence has been held not error, where the judge carefully cautioned the jury against giving it any consideration except as bearing upon the injury likely to flow from slanders by a man of the defendant's standing. *Brown v. Barnes* 39 Mich. 211: s. c. 33 Am. Rep. 375. Like evidence has been held proper in some cases of criminal conversation. *Yundt v. Hartrunft* 41 Ill. 9; *Rea v. Tucker* 51 Ill. 110; *Peters v. Lake* 66 Ill. 236: s. c. 16 Am. Rep. 593; contra, *James v. Biddington* 6 Car. & P. 589. Some courts hold this evidence admissible in all cases of tort which are accompanied by such circumstances of aggravation as are proper to be considered in measuring the plaintiff's damages; and it has been received in cases of trespass to the person, and even of trespass to property. *Birchard v. Booth* 4 Wis. 67; *McNamara v. King* 7 Ill. 432; *Smith v. Wunderlich* 70 Ill. 426; *Bell v. Morrison* 27 Miss. 68; *Rowe v. Moses* 9 Rich. 423; *M'Connell v. Hampton* 12 Johns. 234. Its reception is generally put upon the express ground that one purpose of the suit in such cases is to punish the defendant; and that such damages as might be severe punishment to a poor man would be no punishment at all to a man of great wealth. In actions for seduction the plaintiff has sometimes been allowed to give evidence of the defendant's pecuniary circumstances. *Grable v. Margrave* 4 Ill. 372: s. c. 38 Am. Dec. 88; *White v. Murtland* 71 Ill. 250: s. c. 22 Am. Rep. 100; *Applegate v. Ruble* 2 A. K. Marsh. 128; *McAulay v. Birkhead* 13 Ired. 28; *Clem v. Holmes* 33 Grat. 722: s. c. 36 Am. Rep. 793; *Lavery v. Crooke* 52 Wis. 612: s. c 38 Am. Rep. 768. But in England it is held that the pecuniary circumstances of defendant are not to be proved in suits for seduction; *Hodsoll v. Taylor* L. R. 9 Q. B. 79; and Blackburn J., explains *Andrews v. Askey* 8 C. & P. 7, which has been supposed to lay down a different rule, and shows that the judge in that case pointedly omitted to include the defendant's means as an element of damages. In Iowa such evidence has been excluded

in actions for assault and battery, *Hunt v. Chicago &c. R. R. Co.* 26 Iowa 364; *Guengerech v. Smith* 34 Iowa 348; and also in suits for seduction. *West v. Druff* 55 Iowa 335. In *Dain v. Wycoff* 7 N. Y. 191, 193, Gardiner J., in an action for seduction, condemns such evidence in very pointed language. The suit in that case was brought by the master, nominally for loss of service, as was formerly the case here. "The elementary writers," he says, "concur in saying that damages beyond the mere loss of service may be given for the dishonor of the plaintiff and his family and for injured feelings. But those damages are notwithstanding intended as a compensation for an actual though indefinite injury to which the plaintiff has a right, whatever may be the circumstances of the defendant, and upon principle to nothing more. If the defendant cannot show his poverty in mitigation of damages, there is no reason why the plaintiff should aggravate them by proof of his wealth." And he adds with much good sense: "There can be no reason why twelve men wholly irresponsible should be allowed to go beyond the issue between the parties litigating, and after indemnifying the plaintiff for the injury sustained by him proceed as conservators of the public morals to punish the defendant in a private action for an offense against society."

In Illinois it has been held in one case that the poverty of the plaintiff, as well as the wealth of the defendant, may be an element in aggravation of damages in cases of malicious torts. *McNamara v. King* 7 Ill. 432. But there could be no general rule to that effect. See *Chicago v. O'Brennan* 65 Ill. 164. It has been decided in that state that evidence of the pecuniary circumstances of one of two joint defendants must be rejected, because its tendency, if received, would be to increase the damages as against the defendant, whose means were less, and so to work injustice. *Toledo &c. R. R. Co. v. Smith* 57 Ill. 517. This difficulty in the application of the rule ought to give very satisfactory evidence of its unsoundness; for the rule, if founded in justice and reason, ought to be, and would be, as applicable in one case as another. The plaintiff's injury is no greater and no less be-

cause two persons united in committing it, and the measure of his redress ought not to depend on a circumstance unimportant to the injury.    When it is made to do so it is because the court, while nominally proceeding to give compensation, is really losing sight of compensation in the endeavor to measure the desert of punishment.    It is not redressing the plaintiff's injury, but it is punishing the defendant's misconduct, and it is doing this with the aid of a jury who in respect to it are held under none of the restraints which govern judicial action when punishment is the avowed object of the proceeding.    The anomaly, that a jury may have liberty to punish at discretion for a tort, when, if the act were a crime, the penalty would be carefully·limited by law, and that they may award the penalty they agree upon to a private suitor to swell his actual damages, has never received much countenance in this State.    Compensation for the wrong done has always been held to be the object to be attained ; and while all circumstances of aggravation have been received in evidence, the reception has been for the very sufficient reason that the injury to the plaintiff was the greater in consequence thereof, and that his compensation ought to be in proportion.    The increased damages are sometimes spoken of as exemplary, as in a sense they are ; but in a less misleading and more accurate sense they are compensatory.    *Allison v. Chandler* 11 Mich. 542 ; *Detroit Post Co. v. McArthur* 16 Mich. 447 ; *Welch v. Ware* 32 Mich. 77 ; *Elliott v. Van Buren* 33 Mich. 56 : s. c. 20 Am. Rep. 668 ; *Livingston v. Burroughs* 33 Mich. 511 ; *Friend v. Dunks* 37 Mich. 25 ; *Bennett v. Beam* 42 Mich. 346 : s. c. 36 Am. Rep. 442.

In this case, the plaintiff, if she establishes her case, should recover such damages as will fairly compensate her for the wrong she has suffered.    But we do not see how the wealth of the defendant can add either to the shame and mortification she must suffer, or to the injurious consequences in after life.    If wealth could be inquired into at all, the inquiry could not well go beyond general reputation ; for a knowledge of actual wealth involves an inquiry into details, which in such a suit would render necessary a collateral investiga-

tion more troublesome, in many cases, than the principal issue. But proof of one's wealth by general reputation would be only a part of the showing of his standing in the community; and the plaintiff in this case had the full benefit of this showing without objection. She proved that the defendant was a considerable farmer when he invited her to his house, and continued to be such a farmer until after the wrong was made public, and his importance in the community was apparent. To follow this showing with evidence that he admitted his property to amount to a certain sum was to suggest to the jury the idea of a division of this property between the defendant and the woman who claimed to have been injured by him. This is not a very safe idea to suggest to a tribunal. supposed to act with discretionary authority, and whose feelings may be excited by a pathetic story, under the influence of which they act immediately. The evidence ought not to have been received.

The defendant offered to show that his general reputation for chastity and purity of life had always been good, but the court excluded the evidence. This is complained of; but no authority in support of its reception is cited. This absence of authority furnishes a very strong, if not conclusive, argument against the evidence. Good reputation is a very obvious defense in such a case, if it is admissible, and the failure to resort to it hitherto must be referred to a general understanding that the courts were not at liberty to receive it. In criminal cases the defendant may prove good reputation for what it is worth; but the weight of it in his favor would be much more conclusive in some cases than in others. In cases of alleged seduction it would be likely to have less importance than in cases involving accusations of wrongs by violence; for a woman would naturally be more on her guard in the case of a notorious character than when the man was one in whom the community confided. Indeed, seduction is often the result of an intimacy originating in mutual respect, and which has become dangerous before the parties are fairly aware of it, and while reputation on both sides is unblem-

ished.    We think that in this regard the court committed no error.

Some further questions of evidence which are not likely to arise in the same way again are passed by without notice. Various instructions upon the evidence were asked of the trial judge which concerned the weight and credibility of the proofs merely, and which he was at liberty to deal with as he saw fit.    Too much is frequently asked of the trial judge in the line of instructions when no question of law is involved, and we are not inclined to favor the practice.

The only remaining question is the one made under the statute of limitations.    The suit was not begun until more than six years had elapsed from the time of the alleged seduction.    The suit, under the statute, might have been brought by some relative for the plaintiff; How. Stat. § 7779 ; but if it had been it would have been barred.    But the person whose family relation to the plaintiff was such as naturally to indicate him as the one to bring suit for such an injury on the plaintiff's behalf was the defendant himself, and gross injustice might result from any rule of law which should make his own inability or unwillingness to take the steps called for by the relation operate to extinguish a right of action for his own misconduct.    We have decided that in these cases the woman may sue in her own name; *Watson v. Watson* 49 Mich. 540 ; and when she is an infant at the time of the seduction, and nobody acts for her during her minority, there is the same equity in this case as in any other, that she be allowed a reasonable time after coming of age to decide upon seeking redress.    The statute, How. Stat. § 8713, allows six years for the purpose, and the action was therefore not barred.

For the errors which have been pointed out there must be a new trial.

CAMPBELL and SHERWOOD, JJ. concurred.    Mr. Justice CHAMPLIN did not sit.