### TOTTEN *v.* READ.

*(Common Pleas of New York City and County, General Term.*   June 2, 1890.)

BREACH OF MARRIAGE PROMISE—EVIDENCE—DEFENDANT'S FINANCIAL CONDITION.
   In an action for breach of marriage promise, declarations by defendant that he was the only heir of his uncle, who would leave a large estate to him, and testimony by plaintiff that she "heard" defendant was a very rich man, are inadmissible to prove defendant's financial circumstances.

Appeal from trial term.

Action by Clara Totten against Cassius H. Read for breach of promise of marriage.   The complaint contained two counts.   The first was for a breach of promise of marriage, aggravated by the alleged seduction of the plaintiff by the defendant, and by a further allegation that at the persuasion of the defendant she permitted an abortion to be performed upon her, which resulted in the ruin of her health and great physical injury.   The second count contained the allegations that at various times between the 1st day of September, 1884, and the 22d day of the same month, the defendant promised to marry the plaintiff within the 30 days next ensuing after said promise.   On the trial it appeared that the first cause of action had been released, and plaintiff contended that this release formed the consideration for the promise set forth in

her second cause of action. Defendant denied the promise alleged in the second cause of action. He introduced evidence showing that plaintiff had an action pending in the superior court on what now constituted her first cause of action; that plaintiff's mother, Mrs. Lydia C. Cocks, also had an action pending against defendant and his attorney for slander committed by the attorney, at defendant's direction, by asking her certain questions on cross-examination in another action; and that on September 22, 1884, both their suits were discontinued, and defendant paid Mrs. Cocks $1,200. Defendant's claim was that this payment constituted the real consideration for the release of defendant's first cause of action.

At the trial, the court admitted various statements of one Charles H. Peshall, made to the plaintiff at different times, as evidence of admissions by the defendant. These statements, which consisted of admissions of the former cause of action against the defendant, of repeated promises to marry, and other statements damaging and injurious to the defendant, were admitted upon the ground that Peshall was an agent of defendant, and therefore competent to bind the defendant by his declarations. The jury returned a verdict of $15,695.69 for plaintiff, and from a judgment thereon defendant appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Christopher Fine,* (*Ezek Cowen,* of counsel,) for appellant. *John F. Baker,* (*A. W. Tenney,* of counsel,) for respondent.

LARREMORE, C. J. This is an action for breach of promise to marry. The first ground upon which the distinguished counsel for appellant asks us to reverse the judgment in plaintiff's favor is that the weight of evidence to support the second promise, upon which she now relies, is strongly in favor of defendant. But I cannot subscribe to this view. It is true that this agreement of September 22, 1884, rests substantially on the testimony of plaintiff herself; but, if her personal motive for so testifying is very obvious, that of the witnesses who contradict her is equally apparent. The latter consist of defendant, and persons closely affiliated to him. Plaintiff's ground of recovery on this second cause of action is that the new promise made on September 22d constituted the consideration for the release of the then existing claim. The form of release would seem to bear out this contention. The consideration therein named is "one dollar and other valuable consideration." It is not at all likely that plaintiff, after making a demand based upon such serious grounds as she alleged for her first cause of action, would, without some strong motive, surrender all her rights. Unless she relied upon such new promise, it is difficult to discover what the consideration moving to her was. Counsel for appellant contends that it was the $1,200 paid to her mother. But Mrs. Cocks also had a suit pending against defendant, with others, growing out of the general facts set up in plaintiff's suit, and such payment was the consideration for a general release from the mother, executed simultaneously with plaintiff's release. This money was paid with considerable ceremony, after having been formally counted by the notary in her presence, to Mrs. Cocks personally. It is argued that such payment must have in reality inured to plaintiff's benefit, and been in effect a consideration for her release, because Mrs. Cocks' claim was groundless in law. Nevertheless, Mrs. Cocks had brought a suit for it, which she discontinued; and whether or not she could have been successful is immaterial, if defendant chose to pay her something to have the litigation dropped. It is alleged that Mrs. Cocks had spent considerable money in prosecuting such suit, and would not consent to its discontinuance without being compensated for her actual outlay. Certainly, there is nothing grossly improbable in the jury's finding that a new engagement was entered into on September 22, 1884, at which time all old scores between all parties were wiped out.

The trial judge did not err in the admission of the declarations of the witness Peshall. It appears that he was defendant's confidential friend and general go-between in his relations with plaintiff, arranging interviews, and carrying messages and letters back and forth. There is no good reason why the ordinary principle of agency on this subject should not apply.

Objection was also made to testimony tending to show defendant's financial circumstances. It is well settled that evidence of this character is material in actions for breach of promise, as it tends to show what the plaintiff has lost in the way of maintenance, support, and position by defendant's refusal to fulfill the engagement. *Kniffen* v. *McConnell*, 30 N. Y. 285; *Lawrence* v. *Cooke*, 56 Me. 187; *Miller* v. *Rosier*, 31 Mich. 475; *Bennett* v. *Beam*, 42 Mich. 346, 4 N. W. Rep. 8; *Watson* v. *Watson*, 53 Mich. 168, 18 N. W. Rep. 605; *Kelley* v. *Riley*, 106 Mass. 339.

Nevertheless, the plaintiff was allowed to testify as to alleged declarations of defendant to the effect that he was the only heir of his uncle, who would leave a large estate to him. This evidence was clearly immaterial, and we cannot say that it did not materially increase the amount of the verdict rendered. In *Miller* v. *Rosier*, *supra*, one of the reasons for reversal was that plaintiff had been allowed to show the value of a farm owned by defendant's father. The ground upon which this evidence had been allowed was that the defendant has made statements to plaintiff that his property was invested in the farm. But even under such circumstances, which rendered the argument for the admissibility of the evidence a much stronger one than can be advanced in the case at bar, the supreme court of Michigan held (Judge COOLEY writing the opinion) that this evidence "only went to show the father's circumstances, which were wholly immaterial to the case on trial." Evidence of the pecuniary resources of an uncle, to whose estate the defendant is not shown to have added anything, and who is, moreover, legally entitled to devise and bequeath his estate to any person other that defendant, is even more irrelevant, and its reception was substantial error. We think it was also erroneous, under the pretense of proving defendant's general reputation for wealth, to allow plaintiff's answer to stand: "I heard that he was a very rich man." I cannot see that this tends to establish general reputation. She may have "heard" it only once from a single person. This should have been stricken out on defendant's motion. As the record stands, it is the baldest "hearsay." In my opinion, declarations of the defendant himself as to specific property, real and personal, he owned or had purchased would be admissible. They would come in under the general rule admitting a party's own statements against him which tend to prove a material fact. I do not understand that the intimation in *Kniffen* v. *McConnell*, *supra*, at page 288, that evidence of this kind might be objectionable, was intended to apply to a case where it was confined to defendant's admissions. Nevertheless, for the errors above pointed out, a new trial must be had. The irrelevant evidence was obviously introduced solely to increase the damages, and the verdict is sufficiently large to make it seem probable that it was an influential factor in the result. The judgment should be reversed, and a new trial ordered, with costs to abide the event.

BOOKSTAVER, J., (*concurring*.) As the judgment in this action must be reversed on the grounds hereinafter stated, and a new trial had, I prefer to express no opinion on the reasonableness of plaintiff's position, or whether or not it is sustained by the weight of evidence; nor do I express any opinion as to the motives which may have induced her to execute the release of the first cause of action set up in the complaint; neither am I clear that the witness Peshall was the agent of the defendant in such a sense as to allow his declaration to be received in evidence. The testimony on all these points may be greatly varied on another trial, and I consider it premature to discuss it now.

But I fully concur with the learned chief judge that it was error to allow plaintiff's evidence of defendant's declarations that he was the only heir of his uncle, who would leave him a large estate, for the reasons stated in his opinion. I also concur with him, and for the reasons he states, that it was error not to strike out plaintiff's reply to a question, that "I [plaintiff meaning] heard that he was a very rich man." And on these grounds I concur in the opinion that the judgment should be reversed, and a new trial had, with costs to abide the event.