## Wilson v. Hornstine, Executor.

*Joseph Gross*, for plaintiff; *Blumberg & Sork*, for defendant.

MACNEILLE, J., Feb. 24, 1931.—This is a suit for breach of promise, brought by Lizzie Wilson against Willard N. Hornstine, executor of the estate of Nathan Hornstine, deceased.

A statement of claim was filed, and against that an affidavit of defense raising questions of law, which may be stated as follows:

1. Does an action for breach of promise to marry survive so that it may be brought against the estate of the defendant?

2. Must a suit fall because defendant was married at the time he made his promise to the plaintiff, which was accepted by her?

3. Should the Act of May 2, 1925, P. L. 442, apply, which allows one year after death of a decedent in which certain suits may be brought against his estate where not already barred by the statute of limitations at the time of the death?

The facts as averred in the statement of claim are briefly: That the plaintiff and defendant met prior to Aug. 1, 1923, at which time he represented himself as a single man, although in fact married; that plaintiff remained ignorant of decedent's marriage, and while in that state of ignorance, on July 1, 1924, accepted his proposal to marry within a reasonable time thereafter. Although he lived until Sept. 17, 1929, he neglected and failed to keep his promise.

The summons in *assumpsit* in this case was issued on June 3, 1930—Hornstine having died Sept. 17, 1929—so that from the time of his death to the issue of the summons there elapsed seven months. The promise to marry was made on July 1, 1924, so that six years had not expired at the time of decedent's death.

It is clear then that if the promise, and the breach of it, took place either as of July 1, 1924, or any later date, the summons was issued within six years of his promise, although issued seven months after his death—there was really a grace of one month. However, even if the statute of limitations had only one or two days to run after his death, it would appear that the Act of 1925 allows one more year in which to bring the suit.

That the action for breach of promise is properly brought in *assumpsit*, and that the statute is six years, there can be little doubt.

Action for breach of promise to marry is brought properly in *assumpsit* and not trespass. This question was carefully considered by Allison, J., in In re Craig, 2 Phila. 391 (1857), in which he said the action is an action on the case, although sounding in tort.

This was followed in Donovan *v.* Foley, 5 Dist. R. 91 (1895), which was decided by Swartz, P. J., and again followed in Hushour *v.* Nye, 4 Dauphin Co. Repr. 109 (1901), in which Weiss, J., decided that the statute of limitations is six years from the date of the breach.

It makes no difference in this case that the defendant was a married man at the time of making his promise to the plaintiff, because the plaintiff has averred that she was ignorant of his existing marriage at the time the promise was made. This was held by Elcock, J., in Stevenson *v.* Pettis, 12 Phila. 468, in which he reviewed a line of English decisions on the subject. This principle has been followed in other states, excepting in New York, where the matter seems to be governed by statute.

It is true that in Millward *v.* Littlewood, 5 Exch. 775, it was said there could be no suit for breach of promise where the promisor was without capacity to perform due to his marriage at the time of the promise, but this decision was followed in no English case. Beginning with Wild *v.* Harris, on down, there was accepted the principle that the defendant cannot set up any fraudulent concealment of his marriage to discharge himself from responsibility attaching to his own promise when the plaintiff has executed a consideration on her part by waiting a reasonable time.

The American decisions are in line, as shown in Kelly *v.* Riley, 106 Mass. 339; Prescott *v.* Guyler, 32 Ill. 312, and the Pennsylvania cases, *supra*. According to these cases, the concealment on the part of the defendant of the fact of his marriage was deceit of which he cannot take advantage. Yet this deceit did not lay a different cause or form of action. The action is still breach of promise to marry with all its attendant consequences.

It is true that in some of our states breach of promise has been discussed as an injury to the person and not to the property of the party. It concerns one's state of mind rather than one's property: Flint *v.* Gilpin, 29 W. Va. 740. The same thought is expressed in Webber *v.* St. Paul City Ry. Co., 97 Fed. Repr. 140, 145. Nevertheless, in Pennsylvania, breach of promise has been considered uniformly as properly brought in *assumpsit*, with six years as the statute of limitations of actions.

In Barton *v.* Saylor, 278 Pa. 149, Justice (now Chief Justice) Frazer, in passing upon the question as to when the statute begins to run, said: "The only important question raised relates to the time the statute of limitations began to run. The rule in such case is that it begins, not at the time the promise is made but at the time of the breach." While no question was raised as to whether the statute is six years or two years, it is significant that the paper books upon both sides treated the statute as six years, and that while this particular question was not decided, the fact remains that it was considered. It is to be assumed that if it were the opinion of the Supreme Court that the six years' statute of limitations did not apply, some pronouncement would have been made thereon, yet nothing was said about it.

We then have numerous cases in the lower courts and this case in the Supreme Court in which the six years' statute of limitations has been acquiesced in as applying to breach of promise, and we have no case in which the two-year statute has been considered as applying.

We should now consider the Act of May 2, 1925, P. L. 442, section 1, which is as follows:

"Executors or administrators shall have power, either alone or jointly with other plaintiffs, to commence and prosecute all actions for mesne profits or for trespass to real property, *and all personal actions* which the decedent whom they represent might have commenced and prosecuted, except *actions* for *slander and for libels; and they shall be liable to be sued, either alone or jointly with other defendants in any such action, except as aforesaid, which might have been maintained against such decedent* if he had lived."

This same section further provides:

"All such rights of action which were not barred by the statutes of limitations at the time of the death of decedent may be brought against his executors or administrators at any time within one year after the death of the decedent, notwithstanding the provisions of any statutes of limitations whereby they would have been sooner barred."

It is difficult to see how the question is at all affected by the averment in the plaintiff's statement that a child was born Aug. 8, 1924, which was one month after the alleged promise to marry, and it is obvious that such child was conceived eight months before the promise to marry.

We feel that the Act of 1925, *supra*, permits this suit to be brought when as in this case it is within one year after the death of the deceased, and the six years' limitation had not expired at the time of death. We are of the opinion that the statement of claim makes out a good cause of action, and we dismiss the objections raised as questions of law and allow to the defendant fifteen days in which to file an affidavit of defense to the merits.